# IN THE SUPREME COURT OF IOWA

No. 10–2029

Filed August 12, 2011

**TOBY JOSEPH WELCH,**

Appellant,

vs.

**IOWA DEPARTMENT OF TRANSPORTATION,
MOTOR VEHICLE DIVISION,**

Appellee.

---

Appeal from the Iowa District Court for Polk County, Joseph E. Smith, Senior Judge.

Toby Welch appeals the revocation of his driver's license under Iowa Code section 321J.9 (2009) for refusing to submit to chemical testing. **AFFIRMED.**

Billy J. Mallory of Brick Gentry, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Noel C. Hindt, Assistant Attorney General, for appellee.

**MANSFIELD, Justice**.

This case presents the question whether a motorist who initially refuses chemical testing for intoxication may change his or her mind, provided the motorist does so within a short and reasonable time and certain other conditions are met. We conclude that a rule treating the motorist's initial refusal as determinative is supported by our precedents, consistent with the general assembly's intent, and easier for police and courts to administer. Accordingly, we reject the motorist's appeal and uphold the revocation of his license.

### I. Background Facts and Proceedings.

The essential facts of this case are not disputed.[1] Early on the morning of August 1, 2009, Toby Welch was pulled over by Officer Ryan King of the Des Moines Police Department for driving the wrong way down a one-way street. At 1:54 a.m., Welch consented to and Officer King administered a preliminary breath screening test (PBT). *See* Iowa Code § 321J.5 (2009). The PBT indicated that Welch's alcohol concentration equaled or exceeded the statutory limit of 0.08. Welch was arrested for the offense of operating while intoxicated (OWI) in violation of Iowa Code section 321J.2 and transported to the police station.

At 2:14 a.m., after invoking the implied consent procedures and reading Welch an implied consent advisory, Officer King requested a breath specimen to be used for chemical testing. Officer King provided Welch the opportunity to make phone calls "to seek advice about this test that I'm asking you to take." Welch left a message for his attorney at 2:15 a.m., spoke with his wife at 2:17 a.m., and left a message for his mother at 2:19 a.m. At 2:20 a.m., the following conversation took place:

---

[1] A DVD recording was made of the events at the police station and is part of the record.

OFFICER KING: Anybody else you'd like to call sir?

TOBY WELCH: Nope, I'm going to refuse though.

OFFICER KING: You're going to refuse?

TOBY WELCH: Yep.

Officer King asked Welch to check the "refuse to submit" box and sign the electronic tablet to confirm his refusal. *See State v. Fischer*, 785 N.W.2d 697, 706 (Iowa 2010) (determining that the use of a computer screen satisfies the "written request" requirement of section 321J.6(1)). Welch declined both requests. Welch then received a phone call which he was permitted to answer.

At 2:23 a.m., Officer King and Welch continued their discussion of King's request for a breath specimen:

OFFICER KING: You do want to refuse, is that correct? Toby?

TOBY WELCH: I plead the fifth.

OFFICER KING: Ok.

TOBY WELCH: My name is not Toby.

OFFICER KING: Your name is not Toby?

TOBY WELCH: No sir.

OFFICER KING: What's your name then?

TOBY WELCH: Can't tell you.

OFFICER KING: Ok. Just so you know, I've written in refused to sign and checked the refused box since you don't want to take the test. You will lose your license for a period of one year.

Welch was placed in a temporary holding area and at some point within the next eight minutes received a return phone call from his attorney. At 2:31 a.m., speaking from the holding area, Welch engaged another officer in the following dialogue:

TOBY WELCH: Can I talk to anybody?

OFFICER: About what?

TOBY WELCH: I'd like to go ahead and blow.

OFFICER: Excuse me?

TOBY WELCH: I refused to blow earlier but I'd like to go ahead and blow.

OFFICER: Who was doing the testing?

TOBY WELCH: What's that?

OFFICER: The officer in there did your testing? Hey Ryan?

OFFICER KING: Yeah?

TOBY WELCH: I didn't want to and I refused it.

OFFICER: He refused to test right?

OFFICER KING: Yeah, he refused to even sign the box.

Informed of Welch's newfound desire to consent, Officer King responded that Welch had already refused to submit to the breath test, and it was now "too late." At 2:35 a.m., Welch again requested the test. He stated, "My lawyer told me I need to blow tonight." He then asked Officer King to "throw the paperwork away." Officer King declined Welch's request, commenting, "You made your choice not to take the test."

Based on his refusal to submit to chemical testing, the Iowa Department of Transportation (IDOT) revoked Welch's driver's license for one year. Iowa Code § 321J.9(1)(*a*).

Welch requested an administrative hearing to contest the revocation. *See id.* § 321J.13(1); Iowa Admin. Code r. 761—620.4(1)(*a*)–(*e*). Welch argued revocation was improper because he cured his initial refusal by subsequently consenting to take the requested test within a short period of time. Citing to our decision in *Krueger v. Fulton*, 169 N.W.2d 875, 878–79 (Iowa 1969), the IDOT's administrative law judge sustained the revocation. Welch appealed to the director of the department of transportation. *See* Iowa Code § 321J.13(3); Iowa Admin. Code r. 761—620.4(2)(*a*)–(*f*). The reviewing officer affirmed, noting:

> While [Welch's] refusal in words and reluctance to submit in writing could not be clearer, [Welch] claims a subsequent consent rule is more logical and best furthers the purpose of

the implied consent statutes. The Iowa Supreme Court disagreed forty years ago and has not waivered [sic] from that conclusion.

Having exhausted his administrative remedies, Welch filed a petition for judicial review with the district court. *See* Iowa Code § 321J.14; Iowa Admin. Code r. 761—620.4(3) ("The decision of the director of transportation shall be the final decision of the department and shall constitute final agency action for purposes of judicial review. No further steps are necessary to exhaust administrative remedies."). The district court affirmed the revocation.

Welch appeals. We now must determine whether the "one refusal is determinative" rule set forth in *Krueger* should be abrogated in favor of a more flexible standard permitting a motorist's subsequent consent to cure a prior initial refusal to submit to chemical testing.

## II. Standard of Review.

Judicial review of an IDOT driver's license revocation for refusal to submit to chemical testing is governed by the Iowa Administrative Procedure Act (Iowa Code chapter 17A). *See* Iowa Code § 321J.14. The district court reviews for correction of errors at law. *Ludtke v. Iowa Dep't of Transp.*, 646 N.W.2d 62, 64 (Iowa 2002). On appeal, we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court. *Id.* at 65. If they are the same, we affirm; otherwise we may reverse. *Lee v. Iowa Dep't of Transp.*, 693 N.W.2d 342, 344 (Iowa 2005). Because this is not an area where interpretation of the law has been clearly vested in the discretion of the agency, we need not give deference to the IDOT's interpretation of section 321J.9 and are free to substitute our judgment de novo for the agency's interpretation. *Id.*

In interpreting a statute, our goal "is to give effect to the legislative intent of [the] statute." *State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999). In addition to the words chosen by the legislature, we will also consider " 'the objects sought to be accomplished and the evils and mischiefs sought to be remedied, seeking a result that will advance, rather than defeat, the statute's purpose.' " *Id.* (quoting *Danker v. Wilimek*, 577 N.W.2d 634, 636 (Iowa 1998)).

### III. Analysis.

**A. Iowa's Implied Consent Law.** Enacted in 1963, Iowa's implied consent law was intended to "control alcoholic beverages and aid the enforcement of laws prohibiting operation of a motor vehicle while in an intoxicated condition." 1963 Iowa Acts ch. 114, § 37 (codified at Iowa Code § 321B.1 (1966));[2] *see also Fischer*, 785 N.W.2d at 699–701 (providing a detailed historical overview of Iowa's implied consent statute). In construing various provisions of chapter 321J, we have continuously affirmed that the primary objective of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa's roadways in order to safeguard the traveling public. *See, e.g., Severson v. Sueppel*, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (Iowa 1967) ("It is obvious the purpose of the Implied Consent Law is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor."); *Shriver v. Iowa Dep't of Transp.*, 430 N.W.2d 921, 924 (Iowa 1988) (reiterating that the primary purpose behind chapter 321J is to "promote the public safety by removing dangerous drivers from the highways").

---

[2]Prior to 1986, the implied consent provisions now contained in chapter 321J were codified in chapter 321B.

In order to achieve this goal, the implied consent procedures authorize the withdrawal and chemical testing of blood, breath, or urine when a peace officer has reasonable grounds to believe that a person has been operating a motor vehicle while under the influence of alcohol, a controlled substance, or other drug, and at least one of a series of additional conditions is met.[3]  *See* Iowa Code § 321J.6(1) (2009). Because section 321J.6 further provides that the intoxicated driver "is deemed to have given consent" to withdrawal and testing, we have recognized that implied consent "establishes the basic principle that a driver impliedly agrees to submit to a test in return for the privilege of using the public highways."  *State v. Hitchens*, 294 N.W.2d 686, 687 (Iowa 1980).

However, recognizing the potential invasiveness of collecting bodily substances, the legislature did not endow the State with the unfettered ability to invoke implied consent in order to obtain specimens for chemical testing.  *See, e.g., State v. Hutton,* 796 N.W.2d 898, 902 (Iowa 2011) ("Despite the statutory presumption of consent, a person may refuse to submit to chemical testing."); *State v. Garcia*, 756 N.W.2d 216, 220 (Iowa 2008) (indicating a driver's decision to consent to testing must be voluntary—i.e., "freely made, uncoerced, reasoned and informed"). Thus, from a practical standpoint, and subject to certain exceptions,[4] the driver must actually consent to chemical testing.

---

[3]For example, if "[a] peace officer has lawfully placed the person under arrest for violation of section 321J.2" or "[t]he preliminary breath screening test was administered and it indicated an alcohol concentration equal to or in excess of the level prohibited by section 321J.2."  Iowa Code § 321J.6(1)(*a*), (*d*).

[4]For example, Iowa Code section 321J.7 provides that "[a] person who is dead, unconscious, or otherwise in a condition rendering the person incapable of consent or refusal is deemed not to have withdrawn the consent provided by section 321J.6."

Section 321J.6(2) goes on to provide: "The peace officer shall determine which of the three substances, breath, blood, or urine, shall be tested. Refusal to submit to a chemical test of urine or breath is deemed a refusal to submit, and section 321J.9 applies."

The request for chemical testing must be made within two hours of the PBT or arrest; otherwise, "a test is not required, and there shall be no revocation." Iowa Code § 321J.6(2). "If a person refuses to submit to the chemical testing, a test shall not be given, but the department [of transportation] . . . shall revoke the person's driver's license" for one year if the driver has no previous revocation under chapter 321J. *Id.* § 321J.9(1)(*a*).

**B. Previous Interpretation of "Refusal" as Used in Sections 321J.6 and 321J.9.** Our previous decisions establish that a broad definition of the term "refusal" is more closely aligned with the legislative intent underlying the implied consent statute. In addition to explicit, unqualified refusals, we have found that failures to cooperate, conditional refusals, conditional assents, consents followed by a failure to provide the requested specimen, and consents followed by combative behavior all constitute refusals within the meaning of sections 321J.6(2) and 321J.9(1). *See State v. Bloomer*, 618 N.W.2d 550, 553 (Iowa 2000) (although driver stated he was not refusing breath test when he requested urine test instead, his ultimate failure to take breath test amounted to refusal); *State v. Dulaney*, 493 N.W.2d 787, 789 (Iowa 1992) (motorist's lack of response to request for chemical test and subsequent statement to "[g]et your search warrant" was a failure to cooperate amounting to implied refusal); *Hoppe v. Iowa Dep't of Transp.*, 402 N.W.2d 392, 393 (Iowa 1987) (consent followed by abusive and belligerent behavior preventing the administration of the test deemed

refusal); *McCrea v. Iowa Dep't of Transp.*, 336 N.W.2d 427, 430 (Iowa 1983) (motorist's consent to test but failure to provide urine specimen in absence of valid medical reason considered refusal); *Taylor v. Dep't of Transp.*, 260 N.W.2d 521, 524 (Iowa 1977) (driver's conduct amounted to refusal when, after asking to contact attorney, driver declined to cooperate despite officer's assistance in providing phone directory); *Morgan v. Iowa Dep't of Pub. Safety*, 227 N.W.2d 155, 157 (Iowa 1975) (consent to blood test conditioned on having test administered at hospital of motorist's choosing was refusal); *Buda v. Fulton*, 261 Iowa 981, 991, 157 N.W.2d 336, 342 (Iowa 1968) (plaintiff's statements reflecting a total failure to cooperate were "tantamount to a declination").

We have also previously addressed the circumstance where the motorist initially declines chemical testing and then changes his or her mind. In *Krueger*, a request for chemical testing was made thirty-five minutes after the plaintiff's arrest for OWI. 169 N.W.2d at 876. Krueger originally refused to submit to blood and urine tests both orally and in writing. *Id.* However, one hour and twenty-three minutes later (or one hour and fifty-eight minutes after the arrest was made), Krueger, through his attorney, consented to a blood test. *Id.* We rejected Krueger's contention that he had a right to withdraw his refusal at any time before the expiration of the two-hour period, noting that the two-hour window qualifies the results of the test for admission into evidence and does not confer additional privileges or rights on the arrestee. *Id.* at 878 (citing *Neet v. Hults*, 274 N.Y.S.2d 913, 915 (App. Div. 1966)). As we explained, once a licensee has refused chemical testing, he is not entitled "to defeat revocation of his driving privilege by showing he thereafter changed his mind." *Id.* at 879.

Four years later, in *Swenumson v. Iowa Department of Public Safety*, 210 N.W.2d 660 (Iowa 1973), we considered whether a refusal to consent accompanied by a request to consult with counsel constituted a refusal within the meaning of the implied consent statute. We found that such a "conditional refusal" was the equivalent of a conclusive refusal for purposes of implied consent to chemical testing. *Swenumson*, 210 N.W.2d at 663. Reiterating *Krueger*'s holding that "one refusal is determinative," we also stated that the two-hour statutory requirement "does not define a period during which at any time the arrested person may decide he is willing to take [the test]." *Id.* at 662. Additionally, we quoted with approval language from a similar case decided by the Superior Court of New Jersey Appellate Division:

> "Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and the physiological processes tend to eliminate evidence of ingested alcohol in the system, it is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so. (citation omitted). The occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request."

*Id.* (quoting *State v. Pandoli*, 262 A.2d 41, 42 (N.J. Super. Ct. App. Div. 1970)).

A few years after that, in *Hoffman v. Iowa Department of Transportation*, 257 N.W.2d 22 (Iowa 1977), we addressed the situation of a motorist who had stated he would not take any test or make any statement until he consulted his attorney. Upon speaking with his attorney only six minutes later, the motorist requested a blood test. *Hoffman*, 257 N.W.2d at 24. We deemed Hoffman's initial response to be a "qualified refusal," and on that basis affirmed the revocation of Hoffman's driver's license, citing to our decisions in *Krueger* and

*Swenumson.  Id.* at 26.  Even though Hoffman's subsequent consent occurred "within minutes," we said the officer "was on sound legal ground in refusing to give the test after the refusal."  *Id.*; *see also Morgan*, 227 N.W.2d at 157 (holding that the statute contains no requirement that an officer make a second request after driver conditioned his consent on having test performed at a different hospital).

*Swenumson* and *Hoffman* preceded our decisions in *State v. Vietor*, 261 N.W.2d 828, 831 (Iowa 1978), and *Fuller v. State*, 275 N.W.2d 410, 411 (Iowa 1979), where we made clear that an arrested motorist who asks to call his or her attorney shall be afforded a right to do so before being required to elect whether to submit to the chemical test.  *See* Iowa Code § 804.20 (formerly Iowa Code § 755.17).  A motorist is not deemed to have refused the test for purposes of the implied consent law merely by making such a request.  *Fuller*, 275 N.W.2d at 411.  Nevertheless, *Vietor* and *Fuller*  did not call into question the validity of the "one refusal" rule, and Welch concedes that his section 804.20 statutory right to attorney consultation is not at issue here.

**C. Application of this Interpretation to the Present Case.** Welch does not contest that he initially refused to submit to a breath test.  After speaking with his wife and leaving messages for his attorney and his mother, Welch declined to make any additional phone calls and said he would not provide a breath specimen.  Welch's statement, "I'm going to refuse," constituted an explicit refusal.  Further, and as the district court noted, Welch's subsequent statements and conduct amounted to a failure to cooperate.  *See, e.g., Taylor*, 260 N.W.2d at 524 (failure to cooperate is refusal to consent to chemical testing).  Welch declined to electronically check the appropriate box or sign the IDOT's "Request and Notice Under Iowa Code Chapter 321J/Section 321.208"

form in order to indicate his consent or refusal. At 2:23 a.m., when Officer King once again sought confirmation of Welch's refusal, Welch became unresponsive stating, "I plead the fifth" and "My name is not Toby." Thus, the record contains substantial evidence supporting the agency's determination that Welch initially refused chemical testing. *See* Iowa Code § 17A.19(10)(*f*).

Instead, Welch argues that he did not refuse chemical testing within the meaning of the implied consent statute because his subsequent consent to the breath test at 2:31 a.m. essentially negated his 2:20 and 2:23 a.m. refusals. In support of this argument, Welch asks us to limit *Krueger* and *Swenumson* to their facts. He urges that the rule denying effect to a subsequent consent only applies when a significant amount of time has passed from the earlier refusal.

Welch's attempt to distinguish his case from *Krueger* and *Swenumson* is not persuasive. True, the gap here is significantly shorter than it was in *Krueger* (eleven minutes as opposed to one hour and twenty-three minutes). But in *Krueger*, the time lapse between initial refusal and subsequent consent was not determinative. Rather, without referencing any specific period of time, we rejected outright the notion that a motorist should be given more than one opportunity to make an informed decision. *Krueger*, 169 N.W.2d at 879. Similarly, in *Swenumson*, although that case did not involve an actual attempt to withdraw a prior refusal, we reaffirmed *Krueger*'s holding that "one refusal is determinative." *Swenumson*, 210 N.W.2d at 662.

Welch's argument also fails to account for our decision in *Hoffman*, where the time separation between the original "qualified refusal" and the later attempt to consent was even briefer than it was here. There, only six minutes elapsed between Hoffman's initial response and his

subsequent request to take the test. *Hoffman*, 257 N.W.2d at 24–25. We nonetheless reiterated that "[o]ne refusal is determinative." *Id.* at 26.

In short, under our prior case law, Welch's words and actions constituted a refusal within the meaning of sections 321J.6(2) and 321J.9(1), and his request for a breath test eleven minutes later would have no legal effect.

**D. Should We Overrule Our Prior Interpretation of "Refusal"?**

Thus, in order for Welch to prevail, we must abandon our existing bright-line rule in favor of an approach that enables subsequent consent to chemical testing to cure an initial refusal in certain circumstances. Welch urges us to adopt the five-factor test espoused by the Supreme Court of Kansas in *Standish v. Department of Revenue*, 683 P.2d 1276, 1280 (Kan. 1984), which entailed a slight modification of a test announced by the North Dakota Supreme Court in *Lund v. Hjelle*, 224 N.W.2d 552, 557 (N.D. 1974). Under *Standish*, a previous refusal is effectively rescinded when subsequent consent is made:

> (1) within a very short and reasonable time after the prior first refusal; (2) when a test administered upon the subsequent consent would still be accurate; (3) when testing equipment is still readily available; (4) when honoring the request will result in no substantial inconvenience or expense to the police; and (5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest.

*Id.* at 1280. Welch contends this "flexible" approach is more logical and fair and best furthers the purpose of the implied consent statute.

Although all fifty states have adopted implied consent procedures, jurisdictions are divided in their treatment of an attempt to retract an initial refusal. *See generally* Jonathan M. Purver, Annotation, *Driving While Intoxicated: Subsequent Consent to Sobriety Test as Affecting Initial Refusal*, 28 A.L.R.5th 459 (1995). A minority of state appellate courts

have adopted some form of the so-called flexible rule. *Id.*[5] Under this approach, a previous refusal may generally be cured by a subsequent request for a chemical test so long as the request is made within a reasonable time and the delayed administration of the test will neither materially affect the test results nor substantially inconvenience the police. Minnesota, New Hampshire and Ohio have adopted a narrower, but still somewhat forgiving, standard by which a refusal may only be withdrawn "almost immediately."[6] The majority of jurisdictions, however, have endorsed a stricter approach, finding an initial declination to be binding and conclusive and refusing to recognize a driver's

---

[5]*Pruitt v. State*, 825 P.2d 887, 892–94 (Alaska 1992) (adopting *Lund* test); *Gaunt v. Motor Vehicle Div.*, 666 P.2d 524, 527–28 (Ariz. Ct. App. 1983) (adopting four of the *Lund* factors); *Gallion v. Colo. Dep't of Revenue*, 155 P.3d 539, 541–42 (Colo. App. 2006) (allowing recantation if made in sufficient time to obtain a blood or breath sample within two hours of the person's driving), *aff'd*, 171 P.3d 217 (Colo. 2007); *Larmer v. State*, 522 So. 2d 941, 943–44 (Fla. Dist. Ct. App. 1988) (employing three of the *Lund* factors); *Dep't of Pub. Safety v. Seay*, 424 S.E.2d 301, 302 (Ga. Ct. App. 1992) (adopting *Standish* test); *State v. Moore*, 614 P.2d 931, 935 (Haw. 1980) (adopting *Lund* test); *In re Pangburn*, 857 P.2d 618, 620 (Idaho 1993) (adopting three factors in the flexible rule); *Standish*, 683 P.2d at 1280 (changing the first *Lund* factor to "within a very short and reasonable time after the prior first refusal"); *Pickard v. State*, 572 So. 2d 1098, 1101 (La. Ct. App. 1990) (adopting *Lund* test); *In re Suazo*, 877 P.2d 1088, 1096 (N.M. 1994) (adopting *Lund* with a "stricter standard regarding the temporal criterion"); *Lund*, 224 N.W.2d at 557 (outlining five-factor subsequent consent test); *Baldwin v. State ex rel. Dep't of Pub. Safety*, 849 P.2d 400, 406 (Okla. 1993) (adopting *Standish* test); *State v. Bonvie*, 936 A.2d 1291, 1301 (Vt. 2007) (modifying the first and fifth factors of the *Standish* test); *see also* Md. Code Ann., Transp. § 16–205.1(g) (West, Westlaw through 2011 Reg. Sess.); *State v. Lynch*, 274 A.2d 443, 444 (Del. Super. Ct. 1971) (indicating, in dicta, the implied consent statute "obviously was not intended to preclude an accused from changing his mind and consenting to the test").

[6]*Lewis v. Comm'r of Pub. Safety*, 737 N.W.2d 591, 593 (Minn. Ct. App. 2007) ("[A] subsequent change of heart does not revoke an intial refusal, even when a relatively short period of time has elapsed between the intial refusal and the reconsideration except for an 'almost immediate' change of mind."); *Harlan v. State*, 308 A.2d 856, 858–59 (N.H. 1973) (suggesting an "almost immediately" standard); *In re Brooks*, 271 N.E.2d 810, 812 (Ohio 1971) (setting forth the "almost immediately" standard).

subsequent change of heart.[7]   Nine states do not appear to have addressed the issue.[8]

After taking into account the duration of our existing interpretation of sections 321J.6(2) and 321J.9(1), the text and history of chapter 321J, and the various rationales underlying both the bright-line and flexible approaches, we adhere to our previous view that an initial refusal to consent to chemical testing is binding.

"Stare decisis is a valuable legal doctrine which lends stability to the law . . . ." *Kersten Co., Inc. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 121 (Iowa 1973).  Concomitant to this preference for upholding our prior decisions is the notion that sustained legislative silence raises an inference of the legislature's assent to our jurisprudence.  *See, e.g.*, *Lockray v. State*, 495 N.W.2d 754, 755 (Iowa 1993) (highlighting that "issues of statutory interpretation settled by the courts and not disturbed

---

[7]*Zidell v. Bright*, 71 Cal. Rptr. 111, 113 (Ct. App. 1968); *Marshall v. District of Columbia*, 498 A.2d 190, 192 (D.C. 1985); *People v. Shorkey*, 321 N.E.2d 46, 48 (Ill. App. Ct. 1974); *Parker v. State*, 530 N.E.2d 128, 130–31 (Ind. Ct. App. 1988); *Humphries v. Commonwealth*, 807 S.W.2d 669, 670 (Ky. Ct. App. 1991); *State v. Landry*, 428 A.2d 1204, 1206 (Me. 1981); *Dudenhoeffer v. Dir. of Revenue*, 780 S.W.2d 701, 703 (Mo. Ct. App. 1989); *Johnson v. Div. of Motor Vehicles*, 711 P.2d 815, 817 (Mont. 1985); *Hoyle v. Peterson*, 343 N.W.2d 730, 734 (Neb. 1984); *Schroeder v. State*, 772 P.2d 1278, 1280 (Nev. 1989); *State v. Corrado*, 446 A.2d 1229, 1232 (N.J. Super. Ct. App. Div. 1982); *Donahue v. Tofany*, 304 N.Y.S.2d 484, 485 (App. Div. 1969); *Mathis v. N.C. Div. of Motor Vehicles*, 322 S.E.2d 436, 438 (N.C. Ct. App. 1984); *Bergstrom v. Motor Vehicles Div.*, 799 P.2d 673, 674 (Or. Ct. App. 1990); *Commonwealth v. Schaefer*, 300 A.2d 907, 908 (Pa. Commw. Ct. 1973); *Leviner v. S.C. Dep't of Highways & Pub. Transp.*, 438 S.E.2d 246, 248 (S.C. 1993); *Peterson v. State*, 261 N.W.2d 405, 410–11 (S.D. 1977); *Conrad v. Schwendiman*, 680 P.2d 736, 738 (Utah 1984); *Dep't of Licensing v. Lax*, 888 P.2d 1190, 1192–93 (Wash. 1995); *State v. Rydeski*, 571 N.W.2d 417, 420 (Wis. Ct. App. 1997); *Farmer v. State*, 986 P.2d 165, 167–68 (Wyo. 1999); *see also* W. Va. Code Ann. § 17C–5–7(a) (West, Westlaw through 2011 Reg. Sess.) (providing fifteen minutes after the warnings before the refusal is considered final and the officer has no further duty to provide person with an opportunity to take the test); *Chipman v. Delponte*, No. CV90 03 27 35S 1990 WL 275841, at *3 (Conn. Super. Ct. Oct. 24, 1990) (unpublished opinion) (suggesting a bright-line approach).

[8]Alabama, Arkansas, Massachusetts, Mississippi, Rhode Island, Tennessee, Texas and Virginia.

by the legislature over a period of time have become tacitly accepted by the legislative branch"); *Cover v. Craemer*, 258 Iowa 29, 34, 137 N.W.2d 595, 599 (Iowa 1965) (declining to change the meaning of a statute decided almost sixty years previously because the construction "has evidently met the approval of each successive legislature").

These guiding principles are especially salient when the general assembly has reenacted or repeatedly amended the statutory provision in question without disturbing our previous interpretation. *See State v. Jones*, 298 N.W.2d 296, 298 (Iowa 1980) ("The legislature is presumed to know the state of the law, including case law, at the time it enacts a statute.").

*Krueger* was decided in 1969; *Swenumson* in 1973; *Hoffman* in 1977. The general assembly repealed the entire OWI chapter (321B) of the Iowa Code in 1986 and reenacted the revised provisions in chapter 321J. *See* 1986 Iowa Acts ch. 1220 (codified at Iowa Code ch. 321J). The "refusal to submit" provision has itself been amended numerous times. *See, e.g.*, 2010 Iowa Acts ch. 1097, § 8 (codified at Iowa Code § 321J.9(2) (2011)); 2001 Iowa Acts ch. 32, § 47 (codified at Iowa Code § 321J.4(4) (2003)); 1997 Iowa Acts ch. 177, § 14 (codified at Iowa Code § 321J.9(1)–(2) (1999)); 1995 Iowa Acts ch. 48, § 16 (codified at Iowa Code § 321J.9 (1997)); 1984 Iowa Acts ch. 1292, § 13 (codified at Iowa Code § 321B.13 (1985)); 1982 Iowa Acts ch. 1167, § 20 (codified at Iowa Code § 321B.13 (1983)). We assume the legislature "is familiar with the holdings of this court relative to legislative enactments and that if we have improperly decided what their intention was they will by additional legislation state the real intention." *Mallory v. Paradise*, 173 N.W.2d 264, 266 (Iowa 1969). Despite ample opportunities, the general assembly has declined to overturn our decisions in this area. Thus, it is appropriate

for us to conclude that after more than four decades of legislative quiescence, the legislature is satisfied with a bright-line interpretation of its statute.

According to Iowa's refusal-revocation provision, if a person "refuses" to submit to chemical testing, "a test shall not be given" and the department of transportation "shall revoke the person's driver's license." Iowa Code § 321J.9(1) (2009). Because some jurisdictions that follow a flexible standard have statutory language which closely resembles our own, it would be difficult to say that the language of section 321J.9(1) is totally unambiguous. *See, e.g.,* N.D. Cent. Code Ann. § 39–20–04 (West, Westlaw through 2009 Reg. Sess.) (containing similar language to Iowa's implied consent law but interpreted by the North Dakota Supreme Court as authorizing a flexible approach). Still, when the language chosen by the legislature is such that reasonable minds could disagree as to its meaning, we strive for an interpretation that "best achieves the statute's purpose, and avoids absurd results." *State v. Bower*, 725 N.W.2d 435, 442 (Iowa 2006). Even if we were writing on a blank slate, which we are not, we would not be inclined to adopt Welch's multifactor approach.

To begin with, Welch's complicated standard appears to be at odds with the simplicity of the statute's wording. The law provides that a test shall not be given if the person "refuses to submit to the chemical testing," Iowa Code § 321J.9(1), not if the person "continues to refuse" or "fails to consent within a reasonable time period." *See, e.g., Hoyle v. Peterson*, 343 N.W.2d 730, 734 (Neb. 1984) ("There is nothing in [the implied consent statute] which implies additional time for reflection or reconsideration after a driver's refusal to take the test."); *State v. Bernhardt*, 584 A.2d 854, 859 (N.J. Super. App. Div. 1991) ("[N]otions of curing defects . . . have no application [to the failure to give a breath

sample] absent a clear expression to the contrary by the Legislature."); *see also Fischer,* 785 N.W.2d at 705–06 ("We do not read a requirement into a statutory scheme when none exists because '[i]t is not our province to write such a requirement into the [implied consent] statute.' " (quoting *Gottschalk v. Sueppel,* 258 Iowa 1173, 1183, 140 N.W.2d 866, 872 (Iowa 1966))).

Furthermore, we have characterized an administrative license revocation under section 321J.9 as remedial, promoting the overarching remedial purpose of chapter 321J itself. *State v. Vogel,* 548 N.W.2d 584, 586–87 (Iowa 1996); *see also State v. Murray,* 539 N.W.2d 368, 369 (Iowa 1995) (OWI statutes are remedial in nature). In order to best effectuate their corrective design, OWI statutes are liberally construed in favor of the public interest the legislature sought to protect and against the private interests of the drivers involved. *Murray,* 539 N.W.2d at 369–70. Allowing a motorist under some circumstances to retract a prior decision not to consent to chemical testing appears inconsistent with this overall principle.

Additionally, a bright-line rule has the advantage of providing clear guidance to law enforcement personnel. Clarity as to what the law requires is generally a good thing. It is especially beneficial when the law governs interactions between the police and citizens. Law enforcement officials have to make many quick decisions as to what the law requires where the stakes are high, involving public safety on one side of the ledger and individual rights on the other. A clear, teachable rule is a high priority. Welch's flexible approach, by contrast, is likely to lead to uncertainty in particular cases. *See, e.g., Stone v. McCullion,* 500 N.E.2d

326, 328 (Ohio Ct. App. 1985) ("No specific period of time . . . can be laid down as reasonable or unreasonable in any and all events.").[9]

Also, Iowa's existing, clearcut "one refusal" rule reduces the time and cost burdens on law enforcement. As we noted in *Krueger*, if a motorist can change his or her mind, this means the officer must remain with or near the arrested motorist, effectively removing him or her from other duties, until the "reasonable" time has expired. 169 N.W.2d at 879; *see also, e.g.*, *Zidell*, 71 Cal. Rptr. at 113 ("It would be inconsistent with the purpose of the statute to hold that either [the arresting officer], or the officers on duty at the police station, were required to turn aside from their other responsibilities and arrange for administration of a belated test when once appellant had refused to submit after fair warning of the consequences."). Welch may argue that the last two of the five *Standish* factors alleviate this burden, because the initial refusal may be withdrawn only if there will be no substantial inconvenience or expense to the police and the individual requesting the test has been in the custody of the arresting officer. But "inconvenience" is in the eye of the beholder, and debates could arise as to whether the motorist remained in the officer's custody and, if not, whether the officer deliberately placed

---

[9]*Compare In re Smith*, 770 P.2d 817, 822 (Idaho Ct. App. 1989) (ten to twenty minute delay is permissible), *Lund*, 224 N.W.2d at 556–57 (reversing license revocation where driver subsequently requested test one hour after initial refusal), *and Baldwin*, 849 P.2d at 401–02 (consent provided between five and ten minutes after prior refusal was timely recantation) *with Zahtila v. Motor Vehicle Div.*, 560 P.2d 847, 849 (Colo. App. 1977) (case remanded to determine whether twenty-five minute delay would materially affect result), *Moore*, 614 P.2d at 935 (case remanded to determine whether thirteen minute delay was fatal to subsequent consent), *Standfish*, 683 P.2d at 1280 (request made fifteen to thirty minutes after the driver had been placed in jail "was too late"), *and Suazo*, 877 P.2d at 1097 (declining to prescribe a specific time limit but finding "[t]he temporal standard . . . will always be a very short time, never more than a matter of minutes").

the motorist in another person's custody in order to avoid a possible retraction.

## IV. Conclusion.

For the foregoing reasons, we hold that a motorist's request to take the chemical test need not be honored after he or she has previously refused that test following a valid implied consent advisory. In this case, Welch's words and actions amounted to a "refusal" within the meaning of sections 321J.6 and 321J.9. His subsequent request for a breath test did not alter the legal effect of that refusal. The district court's ruling upholding the revocation of Welch's driver's license is affirmed.

**AFFIRMED.**