# IN THE COURT OF APPEALS OF IOWA

No. 3-1098 / 13-0080
Filed February 5, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**LARRY GENE MORRIS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, Judge.

Defendant appeals the district court's denial of his motion to suppress evidence. **AFFIRMED.**

Colin C. Murphy of Colin Murphy, P.C., Clear Lake, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Carlyle D. Dalen, County Attorney, Nichole Benes and William Hoekstra, Assistant County Attorneys, and Perry Shoemaker, Student Legal Intern, for appellee.

Heard by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**DANILSON, C.J.**

Larry Morris appeals the district court's denial of his motion to suppress evidence. He contends the district court erred by admitting evidence obtained after his arrest because the arrest was without probable cause. In the alternative, he maintains the results of the breath test must be suppressed even if the arrest was lawful because his initial refusal to submit to testing was irrevocable. Because we find the officer had probable cause to arrest Morris, no Fourth Amendment violation occurred. Furthermore, Morris's initial refusal did not preclude the officer from honoring his later request to voluntarily submit to chemical testing. Under these facts, the test results were admissible. We affirm the district court's denial of Morris's motion to suppress.

**I. Background Facts and Proceedings.**

The facts are largely undisputed, and we accept the findings of fact of the district court:

> On September 13, 2011, Gloria Atkinson was driving her vehicle in the city of Clear Lake, Iowa, and had as passengers her twelve and fourteen year old children. This was a Thursday night, and Ms. Atkinson had just picked up her daughter from an activity, and her daughter was seated in the front seat. They were driving in the vicinity of the Yacht Club and Chambers of Commerce Center in the City Beach area of Clear Lake. Ms. Atkinson noted that there were several "kids" in the City Beach area, who appeared to be preparing to "teepee" some houses or trees because of homecoming. Ms. Atkinson noted a Clear Lake Patrol car in the area of City Beach, and assumed that the officer was watching the beach area and the "kids."
> As Ms. Atkinson was driving in the vicinity of City Beach, her car was clearly in her lane of travel. This street has bicycle lanes on the sides. She noted that it was a "beautiful night" and that she was trying to get her children home so they could shower and prepare for school the next day. Another vehicle then approached her vehicle, and the other vehicle was traveling in Ms. Atkinson's

lane. Ms. Atkinson testified that she "took the curb," to avoid a collision with the other vehicle. Despite missing the other vehicle, Ms. Atkinson testified that it came "really close" to her car. Ms. Atkinson testified that she was "totally freaked out" by this event, and she thought immediately to drive over to the police car she saw by the beach and report the incident. She drove over to the Clear Lake Police car, which was occupied by Lt. Deb Ryg. "Still in shock," she reported to Officer Ryg the event concerning the other vehicle, stating that a big truck or SUV, maroon in color, had almost struck her. She did not see the license plate number. However, she did see the driver of the other vehicle clearly, noting that he had a cigarette in his mouth, and despite the brief encounter, he did appear to be intoxicated. On cross-exam, Ms. Atkinson indicated that she could not tell the exact speed of the other vehicle, there was no squealing tires, and she described the color of the vehicle as maroon, with hints of red, although not a "true red."

Lt. Deb[ ] Ryg works for the Clear Lake Police Department. She has worked there for about thirteen years. She has an AA degree from NIACC in law enforcement, and is working on a bachelor's degree. She has been a lieutenant for approximately two years. Her normal shift is from 5:00 o'clock p.m. to 3:00 o'clock a.m. She was working on September 13, 2011, in the City of Clear Lake. Between 9:00 o'clock and 9:30 o'clock p.m., Lt. Ryg had parked her patrol vehicle at North Lakeview Drive and Main Street, was working on reports, and observing the area in general. Lt. Ryg was approached by Ms. Atkinson, who in a loud and excited voice, related what Ms. Atkinson had seen regarding the near collision.

Ms. Atkinson explained to Officer Ryg that a Jeep-type vehicle had almost hit her, and that she had to pull up onto a curb to avoid the collision. Ms. Atkinson described the driver of the other vehicle to Lt. Ryg, as being between 60 to 70 years old, looking intoxicated, with a cigarette hanging out of his mouth. Upon hearing that information, Lt. Ryg recalled that she had seen a Jeep-type vehicle drive by her just a few moments earlier, and that the Jeep had a spare tire on the back with a Chicago Bears spare tire cover. Due to the timing of the events, and her location, Lt. Ryg believed that that vehicle may have been involved. She could still see the headlights of that vehicle proceeding along South Shore Drive.

Lt. Ryg began to follow and catch up to the Jeep. She saw the Jeep proceed along South Shore Drive and caught up to the Jeep as it was parked in front of a residence. Lt. Ryg did not actually stop the Jeep, the driver had stopped the car himself and was getting out of the driver's side door and walking toward the house. Lt. Ryg was wearing a standard uniform and driving a fully

marked squad car. She exited her squad car, and caught up to the Defendant just outside of his residence. She characterized the Defendant as proceeding from his vehicle towards the house at a fast walk to a slow run. Lt. Ryg called to the Defendant that she needed to talk to him. The Defendant replied that he was going into his house, and that he did not want to talk to Lt. Ryg.

Lieutenant Ryg testified she "grabbed onto him" and "wouldn't let him go in the house." She then noticed his eyes were bloodshot and he had an odor of an alcoholic beverage emanating from his person. She also testified she noticed Morris was "very unsteady on his feet" as he walked toward the house.

Lieutenant Ryg then told Morris she would like to do field sobriety testing on him, and he refused. He also refused a preliminary breath test. She then placed him under arrest for operating while intoxicated (OWI) and transported him to the Clear Lake Police Department. The district court summarized the events at the police department, stating:

> While there, he was read the Implied Consent Advisory. A breath test was requested. The Defendant requested to make no phone calls. However, he, while refusing a breath test, indicated that he wanted a blood test. Lt. Ryg indicated that she was offering him a breath test, and not a blood test, and read to him the testing options from the Iowa Code. The Defendant indicated that he was refusing a breath test but not a blood test. Lt. Ryg marked the refusal box on the Implied Consent Advisory, and Lt. Ryg did not ask the Defendant for any further testing. During the booking process, the Defendant spontaneously said "I'll just do it," referring to the DataMaster test. Lt. Ryg replied ["]okay, if that's what you want.["] She then observed the Defendant for a fifteen minute period of time, and prepared the DataMaster unit for the breath test. Mr. Morris then provided a breath test on the DataMaster of .216.

Morris was charged by trial information with operating while intoxicated, first offense, in violation of Iowa Code section 321J.2 (2011), on October 19, 2011. Prior to trial, Morris filed a motion to suppress evidence alleging

Lieutenant Ryg lacked probable cause to arrest him. In the alternative, he argued the results from his breath test should be suppressed because his initial refusal was binding. Following a hearing, the district court denied Morris's motion. He was found guilty of operating while intoxicated after a bench trial on the minutes of testimony. Morris appeals.

**II. Standard of Review.**

Morris claims he was arrested in violation of his Fourth Amendment right to be free from "unreasonable search and seizure." U.S. Const. Amend. IV. We review claims regarding constitutional rights de novo. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). We make "an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Kinkead*, 570 N.W.2d 97, 99 (Iowa 1997). Because Morris did not raise the legality of the arrest under the Iowa constitution, we analyze the legality of the arrest under only the Fourth Amendment. *See State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010). In our de novo review, we may give deference to the district court's findings of fact, but we are not bound by those findings. *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007).

Morris also claims he was given a breath test after initially refusing, in violation of Iowa Code section 321J.9(1). "When the admission of evidence depends on the interpretation of a statute, we review for correction of errors at law." *State v. Palmer*, 554 N.W.2d 859, 864 (Iowa 1996). If the district court properly applied the law and there is substantial evidence to support its findings

of fact, we will uphold its ruling on the motion to suppress. *State v. Moorehead*, 699 N.W.2d 667, 671 (Iowa 2005).

## III. Discussion.

Morris complains Lieutenant Ryg failed to activate the emergency lights on her patrol car, entered the curtilage of his home to make an unlawful seizure, and unlawfully seized Morris in his doorway. Morris relies upon *State v. Lewis*, 675 N.W.2d 516, 525 (Iowa 2004), for the principle that officers need "probable cause and exigent circumstances to enter the curtilage without a warrant." However, on appeal Morris only raises two issues, (1) whether the officer had probable cause to arrest Morris and (2) whether the breath test results were admissible because Morris initially refused the breath test. Morris does not challenge the initial detention or the stop as unlawful nor did his motion to suppress. Furthermore, Morris's claim that the officer made a warrantless entry onto the curtilage of Morris's residence does not appear in the district court ruling, in his motion to suppress, or in the issues he delineated on appeal.

Because our "scope of appellate review is defined by the issues raised by the parties," we limit our review to whether there was probable cause for the arrest and to whether the breath test results were properly admitted. *See Aluminum Co. of Am. v. Musal*, 622 N.W.2d 476, 479 (2001) (quoting *In re Dull's Estate*, 303 N.W.2d 402, 407 (Iowa 1981)).

### A. Probable Cause for Arrest.

Morris contends Lieutenant Ryg did not have probable cause to arrest him. *See State v. Harris*, 490 N.W.2d 561, 562–63 (Iowa 1992) ("A warrantless

arrest must be supported by probable cause."). Our supreme court summarized the probable cause standard in *State v. Pals*, 805 N.W.2d 767, 775 (Iowa 2011), stating:

> Probable cause exists where "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76 [ ] (1949); *see also State v. Freeman,* 705 N.W.2d 293, 298 (Iowa 2005) ("Probable cause is present 'if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it.'" (quoting *State v. Bumpus,* 459 N.W.2d 619, 624 (Iowa 1990))).

If the officer had probable cause to arrest Morris for OWI, an indictable public offense, the officer was entitled to arrest Morris without a warrant. Iowa Code § 804.7(3); *see also Freeman*, 705 N.W.2d at 298..

Here, Lieutenant Ryg witnessed Morris driving. Although she did not witness him driving erratically, she had received a report from a citizen, Atkinson, that he had almost hit her vehicle.[1] *See State v. Walshire,* 634 N.W.2d 625, 629 (Iowa 2001) (citing with approval, *State v. Niehaus*, 452 N.W.2d 184, 189 (Iowa 1990) ("[I]nformation imparted by a citizen informant is generally reliable.")). After Morris exited his vehicle, Lieutenant Ryg observed:

> When I saw him walking up to the house, I could tell that he was unsteady on his feet. When I got close to him, I could smell a strong odor of alcohol, he was not compliant with anything I asked him. I told him I believed that he had been drinking because I could smell alcohol, his eyes were blood shot, he was not steady on his feet. I told him that I would like to do field sobriety testing on him

---

[1] We acknowledge Atkinson believed the vehicle was a maroon Jeep-like vehicle and Morris's Jeep was black in color. However, this fact has little bearing on whether the officer had probable cause to arrest Morris under our facts because the officer did not effectuate a seizure via a traffic stop. *See State v. Harlan*, 301 N.W.2d 717, 720 (1981).

and he refused. I asked him, he refused. I asked him if he would give me a PBT, he refused.

The district court clearly gave weight to the testimony of Lieutenant Ryg in overruling Morris's motion to suppress. These facts are sufficient to support a finding of probable cause. *See Harris*, 490 N.W.2d at 563 ("The officer described the physical symptoms that signaled [the defendant's] intoxication by alcohol: the smell of alcohol on his breath and his bloodshot, watery eyes. We have found such evidence (combined with proof of driving) sufficient to support a finding of probable cause in a drunk driving context") citing *State v. Harlan*, 301 N.W.2d at 720)). Because Lieutenant Ryg arrested Morris with probable cause, the district court properly denied the motion to suppress on this issue. *See Harris*, 490 N.W.2d at 564.

### B. Breath Test.

Morris contends, in the alternative, the results of his breath test should be suppressed because his initial refusal to submit to testing was determinative.[2] In support of his contention, he relies on *Welch v. Iowa Department of Transportation*, 801 N.W.2d 590 (Iowa 2011), which interprets Iowa Code section 321J.9 ("If a person refuses to submit to the chemical testing, a test shall not be given . . ."). The State contends Iowa Code section 321J.9 should be used as a shield and not a sword. We agree.

---

[2] The district court had to find that Morris committed at least one of two alternatives: (1) operated a motor vehicle while under the influence of alcohol and/or (2) operated a motor vehicle while having an alcohol concentration of .08 or more. *See* Iowa Code § 321J.2. Morris was found guilty by the district court of operating while intoxicated under both alternatives. Because the district court intermingled its reasons supporting the verdict on both alternatives, we are uncertain if the test results may have been considered in reaching the verdict on both alternatives. Accordingly, in an abundance of caution, we will address the admissibility of the breath test results.

In *Welch*, a defendant refused to submit to chemical testing following an arrest for operating while intoxicated. 801 N.W.2d. at 592. After multiple refusals, the officer informed the defendant he had "checked the refused box since you don't want to take the test. You will lose your license for a period of one year." *Id.* at 593. The defendant later changed his mind and requested to take the chemical test, but the officer told him it was "too late" and did not allow the defendant to submit to testing. *Id.* The supreme court ultimately held "that a motorist's request to take the chemical test need not be honored after he or she has previously refused that test following a valid implied consent advisory." *Id.* at 602.

Here, Morris contends the court's holding in *Welch* precludes an officer from allowing an arrestee to submit to chemical testing after an initial refusal. We reach a different opinion. The decision in *Welch* recognized the burdens imposed upon law enforcement officers to require them to honor a request or offer to take the test after an initial refusal. *See id.* at 601–02. ("Iowa's existing, clearcut 'one refusal' rule reduces the time and cost burdens on law enforcement. As we noted in *Krueger*,[3] if a motorist can change his or her mind, this means the officer must remain with or near the arrested motorist, effectively removing him or her from other duties, until the 'reasonable' time has expired."). We find a distinction between placing a burden on all law enforcement officers to stand by if an arrested motorist should change their mind and a single officer who chose to do so. Thus, we conclude the principle in *Welch*, that the motorist's

---

[3] *Krueger v. Fulton*, 169 N.W.2d 875, 879 (Iowa 1969).

request "need not be honored," only conveys that while an officer may deny an arrestee's request for chemical testing following an initial refusal, the officer is not required to do so.

Here, the officer chose to take the time to permit Morris to take the breath test although the officer had no obligation to do so. There is no suggestion the officer continued to request a test from Morris after his refusal. Rather, Morris voluntarily changed his mind; initiated the request by stating, without prompting, "I'll just do it"; and then voluntarily took the test.

We also find persuasive the conclusion of another court that determined there was no reason why a law enforcement officer may not administer a test, assuming it was timely administered, "as a matter of grace to a driver who has reconsidered his initial refusal." *See People v. Frazier*, 463 N.E.2d 165, 169 (Ill. App. Ct. 1984). Because Morris took the breath test voluntarily and there is no other reason for suppressing the test results, the test results were admissible.[4]

**IV. Conclusion.**

Because we find Lieutenant Ryg had probable cause to arrest Morris, and because Morris's initial refusal did not preclude the officer from honoring Morris's later request to submit to testing, we affirm the district court's denial of the motion to suppress and the conviction.

**AFFIRMED.**

---

[4] Our court has previously concluded there is no legal basis banning officers from further discussion of the implied consent form after an unqualified, unequivocal refusal. *State v. Winberg*, No. 06-0810, 2007 WL 601973, at *3 (Iowa Ct. App. Feb. 28, 2007).