WATERMAN, Justice
(dissenting).
I respectfully dissent because the majority erroneously requires suppression of a perfectly valid breath test that showed Lukins’s blood alcohol level was more than two and one-half times the legal limit. The majority does so to remedy a violation that did not occur. Lukins never asked for an independent chemical test; rather, he merely requested a second Breathalyzer test. As the majority acknowledges, Lukins had no statutory right to repeat the breath test.
To the extent Lukins’s initial question was ambiguous (“Can I get a re-check, or anything?”), the police chief, Rohrbaugh, clarified what Lukins wanted by specifically asking him, ‘You want your blood checked?” Lukins answered, “No, can I get a re-check?” Rohrbaugh tapped the Datamaster Breathalyzer and said, “A recheck of this?” Lukins responded, ‘Yeah.” They continued discussing Lukins’s request to repeat the breath test. Lukins never asked for a different test to measure his intoxication. I disagree with the majority’s conclusion that Lukins’s statements “can be reasonably construed as a request for an independent chemical test ... adequate to invoke the detainee’s right to an independent test under Iowa Code section 321J.11.” To the contrary, Lukins affirmatively rejected the offer of a blood test and never asked for a urine test or any other form of test. Lukins made clear what he wanted was another breath test. It is factually inaccurate to conclude he invoked his right to an independent test. He did no such thing.
The district court reviewed the booking video and, applying the same test as today’s majority, determined correctly that Lukins never invoked his right to independent testing:
Defendant’s statements and inquires cannot reasonably be construed as a request for an independent chemical test. A review of the booking recording in its entirety shows that it was the Defendant’s desire to have a second chance to provide a breath sample on the Data-master machine at the jail facility. Neither Iowa Code section 321J.11 nor any other statutory provision grants a Defendant a right to a second test on law enforcement’s Datamaster machine. In fact, during one part of the conversation, the officer asked Defendant whether he was requesting a blood test, and the Defendant responded in the negative stating “no, can I get a re-check.” While the Defendant did ask for a “re-check” or a “re-blow” on multiple occasions, the quantity of those requests does not change their nature or the officer’s duties. The court construes each as a request for a second test on the Data-master thereby not implicating Section 321J.11. This conclusion is further sup *914 ported by the Defendant’s request to the jailer, once the arresting officer has left the scene, of “can I get a re-[B]reathaly-zer test by the way.”
I would affirm the district court.
After today, any request to retake the breath test will require disclosure of the independent chemical test options for blood or urine under section 321J.11 (2011). This is a new disclosure requirement, at odds with our precedent applying that statute. We have construed section 321J.11 narrowly, concluding a detainee has a right to an independent test only after the detainee successfully completes the test requested by an officer. See State v. Bloomer, 618 N.W.2d 550, 553 (Iowa 2000). In Bloomer, the defendant asked for a urine test without consenting to the breath test. Id. He had no right to the urine test without taking the breath test. Id. We plainly stated officers are not required to advise a detainee of the option under section 321J. 11 to an independent test when presented with such a request. Id. (“The officer ... was not required to convey that information.”). Similarly, here, all Lukins did was ask to retake the breath test, which he was not entitled to retake. Under Bloomer, the officer could deny Lukins’s improper request without further disclosing what other testing options were available to him. The majority departs from Bloomer, giving section 321J.11 an expansive interpretation by requiring additional disclosures. I would adhere to stare decisis, rather than effectively overruling Bloomer. See State v. Walker, 804 N.W.2d 284, 296 (Iowa 2011) (“Stare decisis is a valuable legal doctrine which lends stability to the law....” (internal quotation marks omitted)).
The majority relies on our decisions applying Iowa Code section 804.20, the statute governing a detainee’s right to call a lawyer or family member. See id. at 290 (discussing purpose of section 804.20). We have never previously equated the disclosure requirements under these separate statutes. I would not start now. Cases under section 804.20 are inapposite because that statute helps protect a detainee’s constitutional right to counsel and privilege against self-incrimination. See id. at 294-95. By contrast, section 321J.11 does not implicate either of those constitutional rights but, rather, merely provides a statutory right to an independent chemical test:
The person may have an independent chemical test or tests administered at the person’s own expense in addition to any administered at the direction of a peace officer. The failure or inability of the person to obtain an independent chemical test or tests does not preclude the admission of evidence of the results of the test or tests administered at the direction of the peace officer.
Iowa Code § 321J.11 (emphasis added). The legislature thereby specified that the breath test results remain admissible notwithstanding the “failure or inability of the person to obtain an independent chemical test.” Id. The majority overrides that command from our elected branches by suppressing Lukins’s breath test results. Suppression is the right remedy under section 804.20, not here.
Today’s decision creates uncertainty. If, in hindsight, what Lukins said is enough to trigger a new consent advisory about testing options, any number of scenarios when detainees question test results could lead to suppression of otherwise valid breath tests. We have emphasized the need for clear rules when citizens suspected of drunk driving are detained for testing under Iowa’s statutory implied consent procedures:
*915 [A] bright-line rule has the advantage of providing clear guidance to law enforcement personnel. Clarity as to what the law requires is generally a good thing. It is especially beneficial when the law governs interactions between the police and citizens. Law enforcement officials have to make many quick decisions as to what the law requires where the stakes are high, involving public safety on one side of the ledger and individual rights on the other. A clear, teachable rule is a high priority. [A] flexible approach, by contrast, is likely to lead to uncertainty in particular cases.
Welch v. Iowa Dep’t of Transp., 801 N.W.2d 590, 601 (Iowa 2011).
In Welch, a motorist who initially refused the Breathalyzer test changed his mind eleven minutes later and asked to take the test. Id. at 592-98. The police refused. Id. at 593. Our court affirmed the revocation of his license. Id. at 602. We unanimously held “a motorist’s request to take the chemical test need not be honored after he or she has previously refused that test following a valid implied consent advisory.” Id. We noted “Iowa’s existing, clearcut ‘one refusal’ rule reduces the time and cost burdens on law enforcement.” Id. at 601. The rule as applied in today’s majority’s opinion is anything but clearcut. Rather, I predict case-by-case adjudication over whether particular comments by intoxicated detainees constitute a request for independent testing.
This uncertainty, and the resulting suppression of otherwise valid breath test results, will undermine the purpose of chapter 321J — public safety.
In construing various provisions of chapter 321J, we have continuously affirmed that the primary objective of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa’s roadways in order to safeguard the traveling public. See, e.g., Severson v. Sueppel, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (Iowa 1967) (“It is obvious the purpose of the Implied Consent Law is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor.”); Shriver v. Iowa Dep’t of Transp., 430 N.W.2d 921, 924 (Iowa 1988) (reiterating that the primary purpose behind chapter 321J is to “promote the public safety by removing dangerous drivers from the highways”).
Id. at 594. I would interpret the requirements of section 321J.11 to further the goal of public safety.
The legislature has specified in great detail the disclosures peace officers are required to make to motorists suspected of drunk driving. See Iowa Code § 321J.8 (implied-consent advisory). Officers are welcome to voluntarily disclose additional information to motorists, but it is not our place as a court to require them to do so, on pain of suppression of compelling evidence of intoxication.
For these reasons, I am unable to join the majority.
CADY, C.J., and MANSFIELD, J„ join this dissent.