# IN THE SUPREME COURT OF IOWA

No. 10–0525

Filed September 30, 2011

**STATE OF IOWA,**

Appellant,

vs.

**CARSON MICHAEL WALKER,**

Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, James D. Birkenholz, Judge.

State seeks discretionary review of district court's ruling suppressing appellee's chemical test results. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT RULING AFFIRMED; CASE REMANDED.**

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, John P. Sarcone, County Attorney, and David M. Porter, Assistant County Attorney, and Scott M. Wadding, Student Legal Intern, for appellant.

Daniel J. Rothman and William G. Brewer of McEnroe, Gotsdiner, Brewer & Steinbach, P.C., West Des Moines, for appellee.

**WATERMAN, Justice.**

Is an attorney able "to see and consult confidentially [with his client] alone and in private" under Iowa Code section 804.20 (2009) by talking through an intercom in a booth separated by a glass partition and watched by a police video camera?  In this prosecution for operating a motor vehicle while intoxicated (OWI), the district court answered "no" to this question of first impression and granted defendant Carson Michael Walker's motion to suppress breath-test results obtained after he met with his lawyer under those conditions.  On discretionary review a divided court of appeals reversed, with the two-judge majority finding no violation of section 804.20.  A concurring opinion found the statute was violated.  All three members of the panel found no prejudice or intrusion on the attorney-client relationship.  We granted Walker's application for further review to decide whether his section 804.20 rights were violated and, if so, to determine the appropriate remedy.

This case presents our first opportunity to construe the limited statutory right to a custodial in-person consultation with counsel.  Other courts have reached divergent conclusions on the extent to which police and jailors can monitor or regulate attorney visits with clients in custody.  A clear majority of courts allow restrictions—such as a partitioned room separating the lawyer and client or video monitoring of their conference— only upon a case-specific, individualized suspicion of a threat to safety or security.  In this case, Walker was cooperative and nonviolent.  For the reasons explained below, we hold the police violated Walker's section 804.20 rights by restricting his attorney conference to the booth with the glass partition under videotaped surveillance.  We apply the same remedy our precedents provide for violation of the section 804.20 statutory right to make timely phone calls to legal counsel or family

members—suppression of the subsequent breath-test results or test refusal, regardless of prejudice. Accordingly, we vacate the decision of the court of appeals and affirm the district court's suppression ruling.

## I. Background Facts and Proceedings.

On December 6, 2009, Ankeny police patrol officer Travis Grandgeorge saw a Ford Expedition being driven down the center dividing line on Southeast Delaware Avenue and pulled it over at 2:23 a.m. Walker, age twenty-eight, was the driver and sole occupant. Grandgeorge noted Walker had slurred speech, watery bloodshot eyes, and smelled of alcohol. Walker admitted he had been drinking and attempted, but failed, several field sobriety tests—the "Walk and Turn" and "One Leg Stand." He refused to take a preliminary breath test (PBT) but scored a "6," indicating intoxication, on the Horizontal Gaze Nystagmus (HGN) test of his ability to keep his eyes focused on the officer's finger as it moved across his face. Walker was arrested at 2:39 a.m. and transported to the new Ankeny police station. There, Grandgeorge gave Walker an implied consent advisory, requested a breath sample at 3:16 a.m., and offered Walker the opportunity to make phone calls. Walker made eight calls, including one to attorney Murray Gotsdiner.

Gotsdiner answered the call and referred the matter to attorney Daniel Rothman, who was more knowledgeable about OWI law. Rothman arrived at the Ankeny Police Department at 4:42 a.m. Grandgeorge greeted Rothman and escorted him to a small detention area with three empty booths with glass partitions to separate visitors from detainees and intercoms with telephone style handsets for communication. Rothman saw a black plastic security camera "bubble" and correctly assumed the booths were monitored by video camera. He

was concerned the room or phones were recorded for sound. No signage indicated whether audio or visual monitoring was in use. Rothman did not ask any officer about audio or video recording or raise any concern about such eavesdropping at this time. In fact, the video was streamed onto a separate monitor and kept for one month. Neither the booth nor the telephone handsets were audio recorded, nor was any officer in the booth area or watching the video monitor while Rothman was there.

Rothman had planned to make his own assessment of Walker's intoxication before advising him whether to take the breath test. Walker was facing a charge of OWI, first offense, and if his blood alcohol level exceeded .15%, he would be ineligible for a deferred judgment. Rothman wanted to have Walker privately perform for him several physical balancing tests, but worried the videotape would create more evidence to be used against his client at trial. Rothman was trained to administer the HGN test, but concluded glare on the thick glass from the bright florescent lighting would prevent him from conducting that test with Walker on the other side of the partition. Rothman also wanted to smell Walker's breath and could not do so through the solid glass barrier. Accordingly, Rothman, without mentioning the video, asked Grandgeorge for a different room without the partition for his client conference. His request was refused, and when he asked again, Grandgeorge checked with his supervisor, then told Rothman department policy prohibited all visitors from entering the detention area. It is undisputed Walker was nonviolent and cooperative.

Because Rothman's repeated requests for a different room were refused, he conferred with Walker from opposite sides of the glass partition for fifteen minutes using the intercom. Rothman made no request to halt any recording while at the station, nor was he told

whether video or audio recording was in progress. After conferring with Rothman through the partition, Walker took the evidentiary Datamaster breath test at 5:02 a.m. The breath test measured Walker's blood alcohol level at .186%, more than double the legal limit of .08% and above the .15% maximum for a deferred judgment.

The State charged Walker with operating while intoxicated in violation of Iowa Code section 321J.2, first offense. Walker moved to suppress the breath-test results based on the alleged violation of his right under section 804.20 to "see and consult confidentially" with his attorney "alone and in private." Walker contended the booth with the glass partition and video monitoring violated the statute, and his request for a different room should have been granted. The State resisted, contending Rothman was allowed to consult with Walker in confidence under reasonable security conditions imposed by the police department.

The district court conducted an evidentiary hearing on the motion to suppress. Grandgeorge and Rothman testified. Grandgeorge testified the purpose of the solid glass barrier and policy denying contact visits was to prevent visitors from passing contraband or weapons to detainees and that "the attorney might pose a safety issue." The Ankeny police policy applied to all visitors: "Not strictly attorneys. We don't allow anyone else into the [detention] area because it could pose a safety issue if it's a friend of theirs. You just never know what could happen, so we don't allow anyone in there." The State does not claim Ankeny police had any individualized, case-specific reason to suspect Walker posed a threat to Rothman or that Rothman would pass his new client contraband or do anything to compromise the contemplated breath test. Nor does the State contend the new Ankeny police station lacked another room without a barrier where Rothman and Walker could have met privately.

Rothman testified his ability to give informed legal advice was impeded. Specifically, he was unable to smell Walker's breath or perform the HGN test, and he chose to refrain from asking Walker to do balancing tests because of the video camera and his belief that video of Walker's performance would be admissible against him at trial. *See State v. Garrity*, 765 N.W.2d 592, 597 (Iowa 2009) (allowing into evidence video of defendant taken at police station without attorney present "to demonstrate Garrity's body motions, judgment, slurred speech and inability to communicate").

The district court found the officers violated Walker's section 804.20 rights by prohibiting him from meeting with Rothman "alone and in private" and granted the motion to suppress the breath-test results. The district court noted the security camera "bubble is visible, and we all know what is behind a bubble. It's Uncle Sam looking. There's no information given to the people using the required communication devices that the audio is not being recorded." The district court elaborated:

> In this case we have an experienced attorney who clearly understands field sobriety tests, and the video itself will be a chilling effect on requesting the defendant to perform a one-leg stand or a walk-and-turn type of test. Because if he failed, he would be giving the Government additional evidence.
>
> . . . .
>
> The glass wall or very large window would clearly interfere with the defense counsel performing the HGN test potentially because of the glass and the lighting. There was no chance to smell any odor of alcohol, and I think clearly the request was made that the meeting be in person.

The State filed an interlocutory application for discretionary review. Walker resisted. We granted the State's application and transferred the case to the court of appeals. The court of appeals reversed, with the

majority opinion concluding the Ankeny Police Department did not violate section 804.20:

> [W]e agree with the State's contention that Walker was provided an opportunity to consult with Attorney Rothman in confidence under reasonable security conditions imposed by the police department.
>
> . . . .
>
> We also do not believe communication through a glass partition or a phone or intercom system prevents either the attorney or client from speaking freely with each other. Section 804.20 guarantees a confidential consultation—not the ability to smell or touch the client, or the space to perform field sobriety tests.

A special concurrence disagreed with the majority's conclusion as to whether section 804.20 had been violated. The special concurrence stated:

> I disagree with the majority that the physical environment in which Walker and his attorney were placed satisfied the "alone and in private" requirement of Iowa Code section 804.20 (2009). "Alone" means "separated from others: isolated." Merriam-Webster's Collegiate Dictionary 34 (11th ed. 2004). "Private" means "withdrawn from company or observation." *Id.* at 988. In my view, these terms do not encompass videotaped booths such as the ones Walker and his attorney were forced to use.

All three judges on the court of appeals panel agreed that, regardless of whether section 804.20 was violated, Walker was not entitled to suppression of the breath-test results because he had made no showing of prejudice resulting from the refusal to provide a private consultation room. The court of appeals noted "no inculpatory evidence was viewed or captured during Walker's meeting." Nor were any conversations between Rothman and Walker overheard and reported to the prosecutor. Given the absence of any actual intrusion on the attorney-client communications or showing of actual prejudice, the court of appeals held the breath-test results were admissible against Walker.

We granted Walker's application for further review.

## II. Standard of Review.

The district court's interpretation of Iowa Code section 804.20 is reviewed for errors at law. *State v. Hicks*, 791 N.W.2d 89, 93 (Iowa 2010). We affirm the district court's suppression ruling when the court correctly applied the law and substantial evidence supports the court's fact-finding. *Id.*

## III. Iowa Code Section 804.20.

It is undisputed that Walker's attorney invoked the statutory right to "see and consult confidentially" with Walker "alone and in private" at the Ankeny Police Department and that he repeatedly requested a private room without the glass partition. It is also undisputed that Walker was cooperative, not belligerent or violent. The Ankeny police had no case-specific reason to suspect Rothman would be at risk alone in a room with physical contact with Walker or that either of them together would do anything to compromise the impending breath test. Under these circumstances, we must decide whether Walker's section 804.20 rights were violated by restricting his attorney consultation to the booth with the glass partition between them under videotaped surveillance. This is a question of statutory interpretation.

Iowa Code section 804.20 states:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. *An attorney*

*shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay.* A violation of this section shall constitute a simple misdemeanor.

(Emphasis added.)

When interpreting a statute, "our primary goal is to give effect to the intent of the legislature. That intent is evidenced by the words used in the statute. . . . In the absence of legislative definition, we give words their ordinary meaning." *Anderson v. State,* 801 N.W.2d 1, 3 (Iowa 2011) (quoting *State v. Hearn,* 797 N.W.2d 577, 583 (Iowa 2011) (internal citation and quotations marks omitted)). "We seek a reasonable interpretation which will best effectuate the purpose of the statute . . . ." *State v. Johnson,* 528 N.W.2d 638, 640 (Iowa 1995).

"The legislative purpose of section 804.20 is to afford detained suspects the opportunity to communicate with a family member and [an] attorney." *Hicks,* 791 N.W.2d at 95 (citing *State v. Vietor,* 261 N.W.2d 828, 831 (Iowa 1978)). Section 804.20 "is a statute of general application," and its scope is broader than OWI cases. *State v. Moorehead,* 699 N.W.2d 667, 674 (Iowa 2005). Most of our cases, however, have involved the statutory right to place a telephone call to an attorney or family member when pulled over for drunk driving. *See, e.g., State v. Tubbs,* 690 N.W.2d 911, 914 (Iowa 2005) ("One purpose of section 804.20, of course, is to allow an arrestee to call an attorney before deciding whether to submit to a chemical test."); *Vietor,* 261 N.W.2d at 831 ("[T]here is a limited statutory right to counsel before making the important decision to take or refuse the chemical test under implied consent procedures."). As we observed in *Vietor,* a person arrested for OWI faces "the necessity of making an immediate decision which later may be used to convict him of a crime." *Id.* The time for

consultation is, however, effectively limited by law enforcement's interest in obtaining the test within two hours of the defendant's driving in order to preserve the presumption afforded under Iowa Code section 321J.2(8)(*a*). *See* Iowa Code § 321J.2(8)(*a*) (providing that the alcohol concentration, established by the results of a specimen withdrawn within two hours after the defendant was driving, will be presumed to be the alcohol concentration at the time of driving); *see also* Iowa Code § 321J.6(2) ("If the peace officer fails to offer a test within two hours after the preliminary screening test is administered or refused or the arrest is made, whichever occurs first, a test is not required, and there shall be no revocation under section 321J.9.").[1]

Although section 804.20 governs the attorney-consultation rights of all arrestees, not just drunk drivers, we read it together with the implied-consent provisions of Iowa Code chapter 321J. In *Welch v. Iowa Department of Transportation*, we noted "we have continuously affirmed that the primary objective of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa's roadways in order to safeguard the traveling public." 801 N.W.2d 590, 594 (Iowa 2011). Nevertheless, we noted precedent "indicating a driver's decision to consent to testing must be voluntary—i.e., 'freely made, uncoerced, reasoned and informed.'" *Id.* (quoting *State v. Garcia*, 756 N.W.2d 216, 220 (Iowa 2008)). The arrestee's intoxication impairs his judgment as well as his driving ability. Such individuals must make a stressful and

---

[1]In addition, the parties do not dispute officers are instructed to observe suspects for fifteen minutes before administering chemical testing. *See* Iowa Admin. Code r. 661—157.2(4) (requiring operator of breath testing device to follow checklist furnished by the Iowa Department of Public Safety's criminal laboratory); Division of Criminal Investigation Alcohol Section, Operating the Datamaster DMT Version 1.0 30 (2009), http://www.dps.state.ia.us/DCI/lab/breathalcohol/index.shtml (checklist providing that arrestee be observed for a fifteen-minute "deprivation" period).

time-sensitive decision whether to take or decline the evidentiary breath test—a choice with significant consequences for their criminal liability and driving privileges.

Our cases addressing the right to a telephone consultation with an attorney make clear that section 804.20 "is to be applied in a pragmatic manner, balancing the rights of the arrestee and the goals of the chemical-testing statutes." *Tubbs*, 690 N.W.2d at 914. Thus, we recently reiterated that an arrestee who "asks to call his lawyer should be permitted to do so before submitting to a chemical test," but that this right "is limited to circumstances where it does not 'materially interfere' with the chemical test procedure." *Garrity*, 765 N.W.2d at 595–96 (quoting V*ietor*, 261 N.W.2d at 832).

While we have repeatedly addressed the detainee's right to make phone calls under section 804.20, this case presents our first opportunity to construe the right to "see and consult confidentially" with an attorney "alone and in private." The statute expressly provides for greater privacy when the attorney personally visits his client at the police station or other place of custody. Indeed, "the telephone calls which section 804.20 assures to persons in custody are not intended to be confidential as is shown by the provision that they are to be made in the presence of the custodian." *State v. Craney*, 347 N.W.2d 668, 678–79 (Iowa 1984) (allowing into evidence defendant's statement, "I killed my baby" made in phone call to attorney overheard by police officer during booking process because statement made in the presence of a third person is not protected by attorney-client privilege). For that reason, attorneys who consult by telephone with persons arrested for OWI typically tell their client to answer only "yes" or "no" to the attorney's questions. By contrast, section 804.20 clearly allows for privileged

communications at the place of detention where the attorney shall be permitted to "consult confidentially" with his client "alone and in private." We have noted the "right of privacy between attorney and client is well recognized and jealously guarded" during jailhouse consultations. *State v. Coburn*, 315 N.W.2d 742, 748 (Iowa 1982).

We must now decide whether the Ankeny police violated Walker's section 804.20 rights by restricting his attorney visit to the booth with the glass partition under videotaped surveillance without audio recording.

**A. The Glass Partition.** Rothman testified at the suppression hearing the glass partition that separated him from his client impeded his ability to give informed legal advice on whether to take the breath test. Specifically, Rothman was trained to administer the HGN test but was unable to use it with Walker because of the glare on the thick glass partition. Rothman also was denied the opportunity to smell his client's breath. The district court, in concluding that section 804.20 was violated, found the "glass wall . . . would clearly interfere with the defense counsel performing the HGN test" and that there "was no chance to smell any odor of alcohol." Some OWI defense counsel take advantage of today's technology by bringing a handheld PBT device to the police station to measure their client's blood alcohol level before advising them whether to take or refuse the breath test. The glass partition at the Ankeny station, which lacks any portal or opening, prevents defense counsel from using such a device.

The State, however, correctly notes that Rothman and Walker were able to see each other through the glass and speak through the intercom. The State contends that this environment is adequate for the limited statutory right to a consultation with counsel under section 804.20,

when balanced against the safety and security needs of the police and the need to protect the integrity of the breath test. For example, the breath test could be compromised if the detainee is given certain substances to put in his mouth. Some detainees are arrested for an assault or disorderly conduct and might pose a threat to a visiting attorney. *See Slager v. HWA Corp.*, 435 N.W.2d 349, 357 (Iowa 1989) (acknowledging "the unpredictable behavior of intoxicated persons"). While it is said that "God protects drunks and fools," our cases recognize that police owe a duty to protect persons arrested. *See Hildenbrand v. Cox*, 369 N.W.2d 411, 415 (Iowa 1985). Walker was intoxicated. Significantly, however, he was compliant, nonviolent, and cooperative. Furthermore, the State does not contend Ankeny police had any case-specific reason to believe that Rothman would be unsafe in a room with Walker or that, left alone together, the two would do anything to obstruct justice by compromising the breath test.

Guidance is provided by other appellate decisions addressing whether a detainee's right to counsel is violated by a partition. Colorado has a statute with operative language equivalent to Iowa's—allowing persons in custody to "see or consult, alone and in private [with an attorney] at the place of custody." Colo. Rev. Stat. Ann. 16–3–403 (West, Westlaw through First Reg. Sess. 2011). In *People v. Parsons*, the appellate court held that an inmate's statutory right to counsel was not violated by restricting his attorney visit to a room with a glass partition that had a pass-through. 15 P.3d 799, 805 (Colo. App. 2000). The court noted this room had "no security cameras or recording devices which observe or record what occurs in the room," but guards could look in on the room through windows. *Id.* at 804. The court described the visiting room as follows:

> [T]he room is constituted of two portions. The attorney occupies one side, and the inmate/client the other side, and the two sides are separated by a partition. The partition has a pass through for exchange of materials. The attorney and the inmate/client can see each other adequately through the glass partition. They can communicate by spoken word in a normal tone of voice, and in so doing cannot be overheard by those who are outside the room, but who may be in the immediate area.

*Id.* Parsons was facing charges of first-degree murder for killing another inmate. *Id.* at 801. The court found the visiting room sufficient "for most purposes of private communication." *Id.* at 805. Parsons nevertheless contended his attorney-client relationship was impaired "because he was not free to use 'physical demonstrations of things that had taken place or [were] alleged to have taken place.'" *Id.* The appellate court rejected this argument, noting that Parsons did have the opportunity to meet several times with his attorney in the jury room at the courthouse where he could perform physical demonstrations without observation by guards. *Id.*

*Parsons* is distinguishable. Walker is facing a charge of OWI, not murder. Moreover, the booth at the Ankeny police station had no "pass-through" opening to allow Rothman to smell his client's breath or perform HGN tests. The Ankeny booth was under videotaped surveillance; the prison visiting room in *Parsons* was not. And most importantly, Parsons was afforded several opportunities to consult with his attorney outside of the jail in a jury room suitable for private physical demonstrations.

Further guidance is provided by federal appellate decisions holding inmates' right to counsel requires allowing "contact" visits with counsel in a room with no partition or barrier between them. *See, e.g., Mann v. Reynolds*, 46 F.3d 1055, 1061 (10th Cir. 1995) (holding that death row inmates' Sixth Amendment right to counsel required allowance of contact

visit in barrier-free room); *Ching v. Lewis*, 895 F.2d 608, 609–10 (9th Cir. 1990) (holding prisoner had right to "contact visitation" with his counsel that was violated by restricting visits to room where he was required to "yell through a hole in the glass"); *Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir. 1973) (finding visitation room at Marion Federal Penitentiary bisected by glass partition denied inmate's access to counsel; noting the difficulty of attorneys "behind glass" establishing trust and a satisfactory working relationship with prisoner, and "the paucity of evidence in the record to support the Government's view that Marion officials reasonably feared importation of contraband by appellants' attorneys").

Commentators surveying the case law note a majority of courts reaching the question hold an inmate's right to counsel requires a visitation room without a physical barrier:

> An issue that has arisen in connection with attorney-client visits is whether prison officials may compel inmates to have noncontact visits with attorneys. Noncontact visits take place with a physical barrier between the inmate and the visitor that prevents one from having any physical contact with the other. Written material has to be passed from the attorney to the inmate by a guard messenger, if at all. While this type of visiting arrangement has been sustained for nonlegal family visits, courts have not been as willing to sanction noncontact visits with attorneys.
>
> The majority of courts that have considered the issue have held that inmates—even inmates on death row—are constitutionally entitled to contact visits with their attorneys. These courts have found noncontact visits too impersonal and unduly restrictive to comport with the constitutional right of inmates to consult meaningfully with their counsel . . . .

Michael B. Mushlin, 3 *Rights of Prisoners* § 12:27, at 257–59 (4th ed. 2009) (footnotes omitted).

Walker's Sixth Amendment right to counsel had not yet attached at the time he was asked to perform the breath test. *See State v. Nelsen*,

390 N.W.2d 589, 591 (Iowa 1986) (Sixth Amendment right to counsel "attaches upon the initiation of adversary criminal judicial proceedings . . . . In Iowa, a criminal proceeding is commenced 'by the filing of a complaint before a magistrate.' " (quoting Iowa Code § 804.1 (1983)); *see also State v. Hoch*, 500 So. 2d 597, 599–600 (Fla. Dist. Ct. App. 1986) (detainee had no federal constitutional right to counsel before being required to submit to blood/alcohol test). Nevertheless, cases adjudicating the constitutional right to counsel are instructive in determining whether a statutory right to counsel is violated by restricting attorney-client visits to a partitioned room subject to videotaped surveillance. Section 804.20 applies in some situations in which the constitutional right to counsel has attached. Accordingly, we interpret the statutory terms "see and consult confidentially . . . alone and in private" to provide the same privacy afforded jailhouse visits under the Sixth Amendment. "This approach makes sound policy sense and would conform to the presumption of statutory constitutionality and our mandate to construe statutes in a fashion to avoid a constitutional infirmity where possible." *In re Young*, 780 N.W.2d 726, 729 (Iowa 2010); *see also Simmons v. State Pub. Defender*, 791 N.W.2d 69, 74 (Iowa 2010) (noting need to consider Sixth Amendment right to counsel to guide interpretation of statute governing payment of attorney fees for representing indigent defendants); *State v. Wiederien*, 709 N.W.2d 538, 542 (Iowa 2006) (interpreting section 708.12(2) to avoid constitutional prohibition).

Courts have restricted attorney visits to "noncontact" rooms separating attorney and client when the prisoner had a "demonstrated propensity toward violence." *Dep't of Corrs. v. Super. Ct.*, 182 Cal. Rptr. 294, 299 (Ct. App. 1982). Courts generally require an individualized

suspicion to justify limiting a detainee's right to meet with counsel in a barrier-free room:

> Prison officials may ban disruptive attorneys from the prison and may prohibit contact, as distinct from noncontact, visits by attorneys to prisoner clients, where justified by specific security considerations. On the other hand, an arbitrary policy of denying a prisoner contact visits with his or her attorney unnecessarily abridges the prisoner's right to meaningful access to the courts, where such a policy prohibits effective attorney-client communication. Because an attorney is considered an officer of the court, there is no reason to suspect that he or she would be a threat to prison security or discipline.

72 C.J.S. *Prisons* § 113, at 570–71 (2005) (footnotes omitted).

We agree with this approach. In *Wemark v. State*, we noted, "Although a strong tradition of loyalty exists between a lawyer and client, a lawyer is also an officer of the court who is bound by a code of professional conduct." 602 N.W.2d 810, 816 (Iowa 1999). Iowa lawyers may be disciplined for misconduct during conferences with clients in custodial detention. *See Comm. on Prof'l Ethics & Conduct v. Durham*, 279 N.W.2d 280, 285–86 (Iowa 1979) (public reprimand for attorney who engaged in sexual contact with client-inmate in prison visiting room). The State has made no showing in this case specific to Rothman and Walker that would justify limiting their conference to a "noncontact" visitation room under the foregoing authorities.

We hold on the specific facts of this case that Walker's section 804.20 rights were violated when the Ankeny police restricted his attorney's visit to the booth with the solid glass barrier precluding contact between attorney and client.

**B. The Videotaped Surveillance.** We next determine whether Walker's section 804.20 right to "see and consult confidentially" with his attorney "alone and in private" was violated by the video surveillance

camera trained on the partitioned booths (without audio recording). In construing statutes, we give words their ordinary meaning. *Anderson*, 801 N.W.2d at 3. "Alone" means "separated from others : ISOLATED." Merriam-Webster's Collegiate Dictionary 34 (11th ed. 2004). "Private" means "withdrawn from company or observation." *Id.* at 988. Persons visually monitored by a security camera are not "withdrawn from . . . observation." Put simply, people would not believe they are meeting "alone and in private" in a room monitored by a police surveillance camera.

In *People v. Dehmer*, the Colorado Court of Appeals held that a statutory requirement to permit an arrested person to "see or consult, alone and in private at the place of custody" was violated by a surveillance camera that did not record sound. 931 P.2d 460, 463 (Colo. App. 1996). That decision, interpreting the same operative statutory language, is persuasive here.

Similarly, Vermont courts have recognized a statutory right to private legal consultation before a person arrested for drunk driving must decide to take or forgo the breath test. *State v. Sherwood*, 800 A.2d 463, 466 (Vt. 2002). The Vermont Supreme Court held that videotaping a defendant's consultation with his attorney violated his right to a private legal consultation. *Id.* ("The tape itself is evidence that defendant's conversation with counsel was not, in fact, private.").

We are to interpret the operative statutory language to " 'best achieve[] the statute's purpose.' " *Welch*, 801 N.W.2d at 600 (quoting *State v. Bower*, 725 N.W.2d 435, 442 (Iowa 2006)). The purpose of section 804.20 is to enable the person arrested to obtain informed legal advice before deciding whether to take the breath test. *Vietor*, 261 N.W.2d at 831. "[I]f a criminal defendant is to receive the full benefits of

the right to counsel, the confidence and privacy of communications with counsel must be assured." *Wemark*, 602 N.W.2d at 816 (noting "violation of the privilege may implicate the Sixth Amendment right to counsel").

Substantial evidence supports the district court's finding that the video surveillance had a chilling effect on Rothman's consultation with Walker. Specifically, as Rothman testified, he refrained from having Walker perform a one-leg stand or a walk-and-turn balancing test out of concern a poor performance would be captured on videotape, providing the government additional evidence to convict. *See Garrity*, 765 N.W.2d at 597 (allowing into evidence video of defendant's conduct at police station to show his inebriation).

The State argues that security reasons justify leaving the video camera running during the attorney consultation. The Kansas Supreme Court surveyed the case law addressing video monitoring of attorney conferences with inmates in *Case v. Andrews*, 603 P.2d 623, 625–26 (Kan. 1979). There, the attorney met with his client in jail in a room visually monitored by a permanently mounted camera. *Case*, 603 P.2d at 624. The attorney placed his suit coat over the camera lens for privacy, but was ordered by a deputy to remove it. *Id.* at 624–25. The detainee brought a habeas corpus action alleging the video surveillance violated his Sixth Amendment right to confer privately with counsel. The *Case* court agreed, stating:

> It must be emphasized that attorneys are officers of the court. It should be presumed, absent a contrary showing, that an attorney representing an incarcerated client will strive to uphold the credibility and standards of the judicial system rather than to subvert them. Absent a showing of any risk to the order or security of the jail, the practice of visually monitoring an attorney-client conference when privacy is requested, is unreasonable. Such

> unreasonable interference violates an accused's Sixth Amendment right to effective representation by counsel. Accordingly, the writ is allowed and the respondent, Daniel R. Andrews, sheriff of Lyon County, is directed to permit attorneys consulting clients held in the county jail to place their coats over the television camera lens during such a conference.

*Id.* at 627. We find this reasoning persuasive in interpreting the limited statutory right to an attorney consultation under section 804.20. We therefore hold that in the absence of any individualized showing of a safety or security risk video surveillance violates an arrestee's right to "see and consult confidentially" with his attorney "alone and in private."

**C. The Remedy for a Section 804.20 Violation.** We now turn to the remedy for the violation of Walker's section 804.20 rights. The district court applied the remedy mandated by more than a generation of our precedent—suppression of the breath-test results. *See Moorehead,* 699 N.W.2d at 673–74 (reviewing history of exclusionary rule under section 804.20 adopted in *Vietor,* 261 N.W.2d at 832). " 'Stare decisis is a valuable legal doctrine which lends stability to the law . . . .' " *Welch,* 801 N.W.2d at 599 (quoting *Kersten Co. v. Dep't of Soc. Servs.,* 207 N.W.2d 117, 121 (Iowa 1973)). We see no reason to retreat from our precedent in this case today. Our prior cases applied the exclusionary rule for violations of a defendant's section 804.20 right to telephone a family member or counsel; as noted above, this statute provides greater protection for confidential, in-person attorney consultations. It would make no sense to provide a lesser remedy.

The court of appeals, relying on *Coburn,* erred in holding Walker was not entitled to suppression because he failed to show prejudice or that any privileged attorney-client communication, in fact, was intercepted and used against him. *Coburn* is distinguishable. That case was decided under the Sixth Amendment, and no constitutional violation

was found because the police did not eavesdrop or attempt to eavesdrop on the defendant's jailhouse conference with his attorney. *Coburn,* 315 N.W.2d at 748. Our prior decisions under section 804.20 require defendants to make no such showing that a privileged communication actually was overheard and used against defendant. Prejudice is presumed upon a violation of section 804.20. *Moorehead,* 699 N.W.2d at 673 ("This is especially true when the breath test is high—in this case nearly twice the legal limit.").

## IV. Conclusion.

For the foregoing reasons, we hold that Walker's section 804.20 right to "see and consult [with his attorney] alone and in private" was violated when the Ankeny police rejected Rothman's request for a different room and restricted his consultation with Rothman to the videotaped booth with a solid glass partition separating the attorney and client, without any case-specific safety or security reason to justify those measures. The remedy for this violation is suppression of the breath-test results, regardless of prejudice or lack thereof. We reaffirm that this limited statutory right is limited to timely consultations that do not materially interfere with implied consent chemical testing procedures. Those holding custody of arrested persons should honor attorney requests for a private, barrier-free meeting room. Upon request, video and audio recordings should be turned off during the attorney consultation or the attorney should be allowed to temporarily block the camera. In any event, audio and video recording of the in-person attorney consultation shall not be admissible against the accused. Physical separation of the attorney and detained client and/or visual monitoring of their conference may be required upon a showing by the

State of an individualized safety or security risk justifying such measures.

We vacate the decision of the court of appeals and affirm the district court's ruling suppressing the breath-test results. We remand this case for further proceedings consistent with this opinion.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT RULING AFFIRMED; CASE REMANDED.**