# IN THE COURT OF APPEALS OF IOWA

No. 13-1066
Filed October 1, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CASSANDRA COLOSIMO,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Odell G. McGhee II, District Associate Judge (motion to suppress), and Arthur E. Gamble, Judge (motion in limone and trial).

Cassandra Colosimo appeals from conviction of operating while intoxicated.  **REVERSED AND REMANDED.**

Gary Dickey of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney General, Stephen Holmes, County Attorney, and Joseph S. Danielson, Assistant County Attorney, for appellee.

Heard by Potterfield, P.J., and Tabor and Mullins, JJ.

**POTTERFIELD, P.J.**

Cassandra Colisomo appeals her conviction of operating while intoxicated (OWI) in violation of Iowa Code section 321J.2 (2011). She urges this court to determine a peace officer invoking the implied consent procedure following a *Miranda* warning[1] must inform the arrested person that the *Miranda* rights do not apply to the request to submit to chemical testing. She argues her test refusal was not knowing and voluntary because she was not informed the *Miranda* advisory did not apply. She also challenges the admission of evidence of her test refusal and of her invocation of her *Miranda* rights as violating her due process rights. She challenges the sufficiency of the evidence to support the conviction. Finally, she asserts the verdict was against the weight of the credible evidence.

Colosimo's actions constituted a refusal for purposes of implied consent and the district court did not err in denying the motion to suppress. We agree, however, Colosimo's due process rights were violated when the recording of her repeatedly invoking her right to counsel was admitted into evidence. We therefore reverse and remand for a new trial.

### I. Background Facts and Proceedings.

At about 1 a.m. on September 6, 2012, Des Moines Police Officers Trudy Simonson, Brook Budd, and Ben Ihde were on Fourth Street involved in an unrelated public intoxication arrest. Officers Simonson and Budd observed

---

[1] In *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), the United States Supreme Court held that a suspect subjected to custodial interrogation must be warned of "the right to remain silent," anything said "can be used against [the suspect] in a court of law," "the right to the presence of an attorney," and if the suspect "cannot afford an attorney one will be appointed . . . prior to any questioning" if so desired.

Cassandra Colosimo's car traveling in the wrong lane on Fourth Street between Court Avenue and Walnut Street. The officers stopped Colosimo after another vehicle turning on to Fourth Street had to stop to avoid hitting Colosimo's car.

Officer Simonson spoke with Colosimo first. Colosimo initially would not respond to Officer Simonson's questions. The officer smelled alcohol and observed Colosimo had bloodshot, watery eyes, and slurred speech. Colosimo admitted she had been drinking. Officer Simonson asked Officer Ihde to assist.

Officer Ihde approached Colosimo as she sat in her vehicle—she was on her cell phone. Officer Ihde "note[d] the odor of alcohol" and observed Colosimo had watery and bloodshot eyes. The officer asked Colosimo to put the cell phone down. She stated she was attempting to call her attorney. Officer Ihde took the cell phone from Colosimo's hand and dropped it in the lap of Colosimo's passenger. He asked Colosimo to step out of the car. He stated he was going to "have her go through field sobriety tests." After Colosimo repeatedly stated she was not going to do anything without the presence of her attorney, Officer Ihde placed Colosimo in handcuffs, read her the *Miranda* advisory, and placed her in the backseat of his squad car. Officer Ihde again asked Colosimo to perform field sobriety testing. She again responded she would not do anything without the presence of her attorney. Officer Ihde asked Colosimo to submit to a preliminary breath test; she replied she would not do anything without the presence of her attorney. Officer Ihde then informed Colosimo she was under arrest for operating a motor vehicle while intoxicated. Officer Ihde again advised Colosimo of her *Miranda* rights, arranged to have her vehicle impounded, advised Colosimo she would be transported to the jail, gave her the implied

consent advisory, and requested a breath sample. "The only response she gave was, 'I'm not doing anything without the presence of my attorney.'"

Once transported to the jail, Colosimo was placed in a room and all of the following was digitally recorded. Officer Ihde again read Colosimo the implied consent advisory and asked if she was willing to take a breath test. Colosimo repeatedly indicated that she would not do anything "until her attorney is present."

Colosimo made several attempts to contact her attorney by telephone but was unsuccessful. Eventually, Officer Ihde informed her she would be required to either consent to the test or refuse it whether an attorney was present or not. Colosimo stated, "I'm not doing anything without the presence of an attorney." Officer Ihde then explained that "if I got anything other than a yes or consent, I would have to consider that a refusal." Colosimo responded, "I'm not refusing. I'm just not doing anything without the presence of my attorney." Officer Ihde told her he was considering her response a refusal and documented her answer as a test refusal on the implied consent form. Colosimo refused to sign the form.

Prior to trial, Colosimo filed a motion to suppress seeking to exclude from trial all evidence of test refusal or other admissions following her invocation of her rights. She argued, "Officer Ihde . . . never indicated to Colosimo that her right under *Miranda* to have her attorney present during questioning did not apply in the context of his request for chemical testing," and "[a]s a result of Colosimo's confusion about her right to the presence of an attorney during questioning, including during the request for chemical testing, her decision whether to provide a breath specimen was not voluntary." Her motion to suppress was denied. The

defendant's request for discretionary review was denied by the Iowa Supreme Court.

Colosimo then filed a motion in limine to exclude from trial any evidence of Colosimo's silence or refusal to answer questions. Defense counsel urged,

> I've raised today an Iowa constitutional due process issue akin to promissory leniency, in that even if *Miranda* doesn't apply because it's not a custodial interrogation, when an officer tells her twice and she attempts to invoke those, that as a matter of due process that can't be used against her unless it's clarified that those rights don't apply.

Relying upon *State v. Mannion*, 414 N.W.2d 119 (Iowa 1987)—a case in which the Iowa Supreme Court rejected the defendant's contentions that his right to counsel under *Miranda*, as well as his privilege against self-incrimination, were violated by the trial court's admission of the testimony of the arresting officer that the defendant refused to perform sobriety tests and allowing the jury to view the videotape of the defendant refusing the tests—the district court denied Colosimo's motion in limine. The court stated:

> The fact that Miss Colosimo couched her refusal to field sobriety tests, a [preliminary breath test] PBT and the implied consent breath test in terms of her right to counsel under *Miranda* is not determinative. The police are not under an obligation to advise a defendant concerning the distinction between a non-testimonial question, like will you submit to a field sobriety test, versus testimonial questions in the form of a custodial interrogation. *Miranda* does not apply to field sobriety tests, preliminary breath tests, and implied consent. Therefore, the defendant's motion in limine is overruled.

Defense counsel then informed the court that the denial of the motion in limine would "affect my presentation of the evidence in that—at least in opening—I'm going to have to address her statements on cross-examination. I'm going to have to ask the officer about her invocation of her rights," all of which he

stated he would not have done otherwise. Defense counsel noted, "I'm trying to make clear . . . I'm not waiving my objection."

At trial, the State presented video and audio recordings of Colosimo's traffic stop and the implied consent procedures at the jail during which Colosimo repeats her unwillingness to do anything without the presence of counsel. Colosimo was convicted of OWI. She filed a motion for a new trial, arguing the court erred in allowing the State to use Colosimo's invocation of her rights after she had twice been given *Miranda* warnings as evidence of test refusal, and the jury's verdict was contrary to the weight of the evidence. The court denied the motion and entered judgment and sentence.

Colosimo appeals, contending (1) her test refusal should have been suppressed due to "confusion" caused by multiple *Miranda* advisories, (2) the admission at trial of her assertion of her rights after receiving *Miranda* warnings violates her due process rights under the federal and state constitutions, and (3) the verdict was against the weight of the credible evidence.

**II. Scope and Standard of Review.**

"We review for correction of errors at law a district court's ruling on a motion to suppress based on the interpretation of a statute." *State v. Lukins*, 846 N.W.2d 902, 906 (Iowa 2014).

"'We review claims the district court failed to suppress evidence obtained in violation of the federal and state constitutions de novo.'" *State v. Baldon*, 829 N.W.2d 785, 789 (Iowa 2013) (quoting *State v. Dewitt*, 811 N.W.2d 460, 467 (Iowa 2012)). In considering such a constitutional claim, we make an

independent evaluation based on the totality of the circumstances as shown by the entire record. *Id.*

A claim that a defendant's due process rights were violated is reviewed de novo. *State v. Hutton*, 796 N.W.2d 898, 901 (Iowa 2011).

**III. Discussion.**

***A. Legal principles***. Iowa Code section 321J.2 makes it an offense to operate a motor vehicle while under the influence of an alcoholic beverage or while having an alcohol concentration of .08 or more. Iowa Code section 321J.6—entitled "Implied consent to test"—establishes the authority of a peace officer to test the breath, blood, or urine of any person suspected of driving while intoxicated. The provision states that when there are "reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 or 321J.2A" a person is "deemed to have given consent to the withdrawal of specimens." *Id.* § 321J.6(1). "The premise of this statute is that a driver impliedly agrees to submit to a test in return for the privilege of using the public highways." *State v. Oberbay*, 810 N.W.2d 871, 875 (Iowa 2012) (citation and quotation marks omitted).

Case law has developed the contours of a valid consent. *See State v. Garcia*, 756 N.W.2d 216, 220 (Iowa 2008) ("To be valid, the driver's decision to consent to testing must be voluntary, i.e., freely made, uncoerced, reasoned, and informed."). It has also established what constitutes a refusal:

> Our previous decisions establish that a broad definition of the term "refusal" is more closely aligned with the legislative intent underlying the implied consent statute. In addition to explicit, unqualified refusals, we have found that failures to cooperate, conditional refusals, conditional assents, consents followed by a

failure to provide the requested specimen, and consents followed by combative behavior all constitute refusals within the meaning of sections 321J.6(2) and 321J.9(1).

*Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 595 (Iowa 2011); *see also* cases cited therein. Evidence of a person's refusal is admissible at trial. Iowa Code § 321J.16 ("If a person refuses to submit to a chemical test, proof of refusal is admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A.").

**B. Motion to Suppress.** In *State v. Bloomer*, 618 N.W.2d 550, 552-53 (Iowa 2000), the issue presented to our supreme court was whether the defendant's statement "that he was not refusing to take the breath test but that he wanted his blood or urine tested" was appropriately deemed a refusal under implied consent procedures and therefore admissible at his trial for OWI. The court wrote:

> In *Ginsberg v. Iowa Department of Transportation*, 508 N.W.2d 663 (Iowa 1993), this court considered an alleged test refusal in this context. We observed that factors bearing on the decision included the defendant's and the officer's words and conduct as well as the surrounding circumstances. *Ginsberg*, 508 N.W.2d at 664. In *Ginsberg*, as here, officers asked the defendant to submit to a breath test following his arrest for operating while intoxicated. *Id.* Ginsberg, having said he wanted a blood or urine test, was then asked if that meant he was refusing to take the breath test. Ginsberg reportedly stated "that he was not refusing to take the breath test but that he wanted his blood or urine tested *as well*." *Id.* (emphasis added). The officers treated this as a refusal and this court reversed, concluding that the record revealed Ginsberg's attempt to assert his right to independent testing rather than a refusal of the requested test. *Id.* We nevertheless reiterated the rule that "anything less than unqualified, unequivocal consent is a refusal." *Id.* (quoting *Ferguson v. Iowa Dep't of Transp.*, 424 N.W.2d 464, 466 (Iowa 1988)).

The record before us, though similar to *Ginsberg*, contains important differences. The trooper first testified that Bloomer insisted on a urine test instead of a breath test. But he conceded on cross-examination that Bloomer stated he did not refuse the officer's test. Bloomer, testifying on his own behalf, essentially agreed with this characterization of their conversation. Importantly, however, the record reveals that Bloomer's actions spoke louder than his words. After forty-five minutes of discussion, Bloomer had neither signed the form nor given a breath test. The officer treated the impasse as a test refusal.

On appeal, Bloomer seeks to justify his inaction on the ground that the trooper never told him he could take an independent test in addition to the requested breath test. The officer, however, was not required to convey that information. [*State v.*] *Wootten*, 577 N.W.2d [654,] 655 [(Iowa 1998)]. ("Officers are not required to advise a defendant of the statutory right to an independent test."). Bloomer exercised his statutory right to consult with counsel. *See* Iowa Code § 804.20. Although Bloomer now complains about Trooper Konecne's emphasis on his right to choose the test, the record reveals no denial by the trooper of any request by Bloomer to take an independent test. *Cf. Casper v. Iowa Dep't of Transp.*, 506 N.W.2d 799, 802 (Iowa Ct. App. 1993) (dicta suggesting that proof of denial would require suppression of police-administered chemical test).

Under this record, *we find no error by the court in refusing to suppress proof of Bloomer's test refusal. Bloomer neither consented to the test chosen by the peace officer, nor did he invoke his statutory right to an independent test.* Thus the court committed no error in admitting evidence of his refusal to submit to the requested breath test.

*Bloomer*, 618 N.W.2d at 553 (emphasis added).

Colosimo acknowledges *Miranda* protections do not apply to a request to submit to chemical testing under implied consent procedures. *See Swenumson v. Iowa Dep't of Pub. Safety*, 210 N.W.2d 660, 663 (Iowa 1973) ("Since the *Miranda* warning applies to interrogation and the implied consent procedure relates to submission of a bodily substance to chemical testing, the warning does not purport to make the *Miranda* rights applicable during the implied consent proceeding."). She argues, however, her deemed refusal to submit to the

requested breath test was involuntary because the two *Miranda* warnings she received misled her into believing she had a right to defer her decision whether to take the breath test until she had the advice of counsel. She asks that this court adopt the "confusion doctrine" recognized in a minority of states and conclude that Officer Ihde's failure to clarify that she had no right to counsel prior to consenting to or refusing implied consent testing rendered her "refusal" involuntary.

When a person asserts their implied consent decision was not voluntary, "the standard requires an examination of the totality of the circumstances to determine whether the decision was voluntary or coerced." *State v. Knous*, 313 N.W.2d 510, 512 (Iowa 1981). "Proof of knowledge of the right to refuse is not a prerequisite to proving the decision was voluntary. It is merely one relevant circumstance." *Id.*

In *Swenumson*, the court observed,

> [I]t has been recognized the juxtaposition of the *Miranda* warning, the implied consent procedure, and the request for chemical test *may raise a question of fact as to whether the arrested person was misled or confused* by the *Miranda* warning to believe he had a right to the advice of counsel before responding to the request for chemical test.

210 N.W.2d at 663 (emphasis added). To avoid this question of fact, the *Swenumson* court suggested: "The peace officer invoking the implied consent procedure is therefore well-advised to tell the arrested person the *Miranda* rights do not apply to the implied consent proceeding." *Id.*

In *State v. Vietor*, 261 N.W.2d 828, 831 (Iowa 1978), our supreme court was confronted with the seeming contradiction presented to a person arrested for

OWI who had been read the *Miranda* advisory, which includes the right to counsel, and then given an implied consent advisory, which then specifically stated the arrestee did *not* have a right to consult an attorney prior to consenting or refusing a bodily specimen. The *Vietor* court noted that *Swenumson* dealt with an administrative license revocation proceeding to which *Miranda* protections "do not apply." *Vietor*, 261 N.W.2d at 830. With respect to the statutorily required statements under implied consent provisions (now codified at § 321J.8[2]), the court stated, "[T]he statute did not require the officer to tell [the defendant] he had a right to counsel. It simply forbade telling [the defendant] he did not have right to counsel." *Id.* at 831.

In an effort to "reach some accommodation" between implied consent provisions and the right to contact an attorney—now codified at section 804.20[3]—the court recognized a "limited *statutory* right to counsel before making

---

[2] The applicable portions of section 321J.8, entitled "Statement of officer," provide:
> (1) A person who has been requested to submit to a chemical test shall be advised by a peace officer of the following:
> (a) If the person refuses to submit to the test, the person's driver's license or nonresident operating privilege will be revoked by the department as required by and for the applicable period specified under section 321J.9.
> (b) If the person submits to the test and the results indicate the presence of a controlled substance or other drug, or an alcohol concentration equal to or in excess of the level prohibited by section 321J.2 or 321J.2A, the person's driver's license or nonresident operating privilege will be revoked by the department as required by and for the applicable period specified under section 321J.12.

[3] Section 804.20 provides:
> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the

the important decision to take or refuse a chemical test under implied consent procedures." *Id.* (emphasis added). The *Vietor* court "enunciated three statutory rules." *State v. Garrity*, 765 N.W.2d 592, 595 (Iowa 2009).

> First, an arrestee that asks to call his lawyer should be permitted to do so before submitting to a chemical test. Second, if that person is denied the opportunity to call a lawyer, the evidence of refusal to engage in the chemical test is inadmissible. Third, the arrestee's right to prior consultation is limited to circumstances where it does not "materially interfere" with the chemical test procedure.

*Id.* at 595-96 (citations omitted).

Colosimo was afforded her right to contact an attorney. Officer Ihde assisted her in her numerous attempts to reach defense counsel. Eventually, Colosimo was informed she would have to consent to or refuse testing regardless of whether she was able to reach her attorney. Colosimo again stated she would do nothing without the presence of her attorney. Officer Ihde then explained that "if I got anything other than a yes or consent, I would have to consider that a refusal." Colosimo responded, "I'm not refusing. I'm just not doing anything without the presence of my attorney." Officer Ihde told her he was considering her response a refusal and documented her answer as a test refusal on the implied consent form. Officer Ihde informed Colosimo that refusing to submit would result in the revocation of her license.

Colisomo asserts that because she was not told the *Miranda* rights did not apply to the implied consent procedures, she could not make a knowing and

---

presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.

conscious refusal. But, it is the rule in this state that "anything less than unqualified, unequivocal consent is a refusal." *Bloomer*, 618 N.W.2d at 553; *see also Welch*, 801 N.W.2d at 595 ("In addition to explicit, unqualified refusals, we have found that failures to cooperate, conditional refusals, conditional assents, consents followed by a failure to provide the requested specimen, and consents followed by combative behavior all constitute refusals within the meaning of sections 321J.6(2) and 321J.9(1)."). Colosimo's failure to consent to testing after Officer Ihde informed her she would have to consent to or refuse testing regardless of whether she was able to reach her attorney was validly deemed a refusal under Iowa law.[4] *See Welch*, 801 N.W.2d at 594 (citing with approval, *Taylor v. Dep't of Transp.*, 260 N.W.2d 521, 524 (Iowa 1977) (finding similar driver's conduct amounted to refusal)).

The district court rejected Colosimo's motion to suppress, finding:

> The question is was she confused by the *Miranda* to such an extent that that was the basis for continuing to make an argument that she was not going to do anything until she was in touch with her attorney. The officer testified that he thought she was potentially attempting to delay the process or not cooperate. At this point there is no evidence in the record that the Defendant specifically was confused other than the statement.

---

[4] In an analogous situation, *Welch*, 801 N.W.2d at 597, the court explained:
> *Swenumson* and *Hoffman* preceded our decisions in *State v. Vietor*, 261 N.W.2d 828, 831 (Iowa 1978), and *Fuller v. State*, 275 N.W.2d 410, 411 (Iowa 1979), where we made clear that an arrested motorist who asks to call his or her attorney shall be afforded a right to do so before being required to elect whether to submit to the chemical test. *See* Iowa Code § 804.20 (formerly Iowa Code § 755.17). A motorist is not deemed to have refused the test for purposes of the implied consent law merely by making such a request. *Fuller*, 275 N.W.2d at 411. Nevertheless, *Vietor* and *Fuller* did not call into question the validity of the "one refusal" rule, and Welch concedes that his section 804.20 statutory right to attorney consultation is not at issue here.

Colosimo maintains Officer Ihde twice read her the *Miranda* advisory and "[f]rom that point forward, Colosimo steadfastly responded to all further questioning by asserting her right to remain silent until she was at least in the presence of counsel." From this premise, she argues she was denied the right to make a knowing and conscious refusal and denied her due process. Beyond the *Swenumson* statement that a fact issue may arise, the Iowa Supreme Court has never recognized this "confusion doctrine,"[5] and we do not believe it is for this court to do so. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed.").

Viewing the totality of the circumstances and precedential case law to which we are bound, we reject Colosimo's contention that her refusal was involuntary. Colosimo's actions constituted a refusal for purposes of implied

---

[5] *See Kurecka v. State*, 67 So. 3d 1052, 1056-59 (Fla. Ct. App. 2010) (discussing the "confusion doctrine" and approach taken by several states). The Kurecka court rejected the doctrine, stating:

> The [implied consent] statute requires only that the person be told that his failure to submit to the test will result in a suspension of the privilege to drive for a period of time and that a refusal to submit can be admitted at trial. The implied consent statute establishes a presumption that those who have elected to enjoy the privilege of driving will, in turn, be required to submit to chemical testing if they are suspected of driving under the influence. *See* §§ 316.1932, 316.1933, and 316.1934, Fla. Stat.; *State v. Busciglio*, 976 So.2d 15, 19–20 (Fla. 2d DCA 2008) (explaining that by exercising the privilege to drive, all drivers have already consented to taking a breath test pursuant to section 316.1932). The licensed driver in Florida, having already consented to the test, is thus not entitled to secure the advice of an attorney. Accordingly, excluding evidence based on a suspect's misconception about the right to counsel prior to taking the breath test would be contrary to the legislative intent of Florida's implied consent law.

*Id.* at 1060. *See also State v. Reitter*, 595 N.W.2d 646, 654-55 (Wisc. 1999) (noting Wisconsin has not adopted the confusion doctrine and holding "that where a defendant exhibits no confusion, the officer is under no affirmative duty to advise the defendant that the right to counsel does not attach to the implied consent statute").

consent. *See Bloomer*, 618 N.W.2d at 553; *see also Welch*, 801 N.W.2d at 600 ("Despite ample opportunities, the general assembly has declined to overturn our decisions in this ['refusal to submit'] area. Thus, it is appropriate for us to conclude that after more than four decades of legislative quiescence, the legislature is satisfied with a bright-line interpretation of its statute.").

"Proof of a defendant's test refusal may be submitted in evidence at trial." *Bloomer*, 618 N.W.2d at 552. The trial court did not err in denying Colosimo's motion to suppress. *See* Iowa Code § 321J.16.

***C. Due process claim.*** Colosimo next contends she was denied due process when the district court denied her motion in limine. As explained by defense counsel to the trial court:

> [I]t's a cornerstone of her *Miranda* rights that if she exercises them, that they cannot be used against her at trial as an indicia of guilt. And at no time did Officer Ihde inform her, hey, your *Miranda* rights don't apply to certain questions such as will you take a test, or any other question. So, Your Honor, we ask that her answers to any question that he asked in which she is invoking her *Miranda* rights, that those not be admitted at trial because, number one, they wouldn't be relevant; number two, they would violate her rights; and, number three, the potential for the jury to interpret that as indicia of guilt would violate her rights.

The State argued that section "321J.16 is very clear that the State can comment on refusal, and just because refusal is couched as invocation should not shield the defendant from the State being able to use the refusal as indicia of guilt." While we agree the State is allowed to present evidence of Colosimo's refusal, it may not do so by the method used here, which included her invocations of right to counsel.

In *State v. Lyman*, 776 N.W.2d 865, 878 (Iowa 2010), the Iowa Supreme Court clearly stated, "It is impermissible to use an individual's exercise of his or her constitutional rights against them after the State implicitly assured the individual, through the *Miranda* warning, that his or her invocation of those rights would not be penalized." (Citing *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986)). "*Any* breach of this implied assurance is a breach of fundamental fairness required by the due process clauses of the Federal and Iowa Constitutions." *Lyman*, 776 N.W.2d at 878 (emphasis added). Consequently, Colosimo's due process rights were violated when the recordings of her invoking her right to counsel after receiving *Miranda* warnings were admitted in evidence. *State v. Mannion*, 414 N.W.2d 119 (Iowa 1987), upon which the district court relied, is inapt because the question presented there was whether the person's refusal to submit to sobriety tests was admissible.[6] But there was no attempt In *Mannion* to introduce a recording of the defendant's invocation of his right to counsel, was the case here.[7] *See Mannion*, 414 N.W.2d at 120.

**D. Was error harmless?** "Most federal constitutional errors, including the erroneous admission of evidence in a criminal trial in violation of a defendant's . . . Fourteenth Amendment rights, do not require reversal if the error is harmless." *State v. Walls*, 761 N.W.2d 683, 686 (Iowa 2009). "To establish harmless error, the State must 'prove beyond a reasonable doubt that the error

---

[6] The officer could testify that Colosimo refused to submit to a breath test. *See Bloomer*, 618 N.W.2d at 553.

[7] In *Mannion*, the jury was allowed to view—without audio—the videotape of the defendant's field sobriety tests. 414 N.W.2d at 121 ("Standing alone, in the absence of any evidence of Mannion's refusal, the videotape was admissible as physical, rather than testimonial, evidence.").

complained of did not contribute to the verdict obtained." *Id.* (citations and internal quotation marks omitted).

> To determine whether the State has met its burden under the harmless-error standard, the court employs a two-step analysis. First, the court asks what evidence the jury actually considered in reaching its verdict. Second, the court weighs the probative force of that evidence against the probative force of the erroneously admitted evidence standing alone. This step requires the court to ask "whether the force of the evidence is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same without the erroneously admitted evidence."

*Id.* at 686-87 (citations omitted).

Here, the jury was instructed that the State had to prove (1) "the defendant operated a motor vehicle" and (2) "[a]t the time, the defendant was under the influence of alcohol." They were further instructed:

> Instruction 11
> A person is "under the influence" when, by drinking liquor, wine and/or beer, one or more of the following is true:
> (1) Her reason or mental ability has been affected.
> (2) Her judgment is impaired.
> (3) Her emotions are visibly excited.
> (4) She has, to any extent, lost control of bodily actions or motions.
> . . . .
> Instruction 14
> The defendant was asked to give a breath sample so it could be analyzed to determine the percent of alcohol in her blood. The defendant refused.
> A person is not required to give a sample of any bodily substance; however, you may consider a refusal in reaching your verdict.

The prosecutor in closing argument stressed the instruction allowing the jury to consider Colisimo's "refusal"—in fact it was the theme of the closing:

> When you go back to deliberate it's often helpful to have a theme or an issue in mind to consider, and I propose when you go back to deliberate, ask yourself did the defendant see the writing on

the wall? And what I mean by that is consider the three refusals. The defendant refused to perform field sobriety tests, she refused to submit to the preliminary breath test, and she also refused to supply a breath specimen for the DataMaster.

Ask yourself did she refuse because she knew what the answer would be if she submitted to any one of those tests—

One of the jury instructions that you'll receive is you can, in fact, consider these refusals in reaching your verdict. In continuation of that theme of seeing the writing on the wall, ask yourself does it make sense for the defendant to refuse everything if she was, in fact, not under the influence. And I want you to pay special attention to the refusal of the DataMaster, the request for the breath specimen at the jail.

Portions of the video recording at the police station were replayed during the prosecutor's closing argument—during that portion, Colosimo states at least ten times that she would do nothing until her attorney was present.

We acknowledge the jury was instructed:

Instruction 15
In this case, you have heard evidence that the defendant repeatedly invoked her right to remain silent and requested the presence of counsel after being advised of her *Miranda* rights. No inference of guilty shall be drawn from the mere fact that she invoked her right to remain silent and requested the presence of counsel following the *Miranda* warning. The burden of proof remains upon the State to prove the guilt of the defendant.

We also acknowledge that under applicable case law, nontestimonial aspects of evidence contained on a videotape may be admissible demeanor evidence. *See State v. Decker*, 744 N.W.2d 346, 355-56 (Iowa 2008). In *Decker*, the court considered whether the admission into evidence of a videotape showing the defendant's asserting his right to remain silent "at least five times and did indeed remain silent for a considerable period of time" required a reversal of the conviction. *Id.* at 354. The supreme court found that because the case was tried to the court and the trial court did not indicate it relied upon

impermissible evidence, the defendant's conviction was allowed to stand. I*d.* at 356. But, as the *Decker* court opined:

> Decker argues that it would be extremely difficult for the finder of fact to separate out the permissible from the impermissible evidence, requiring reversal of his convictions. If this case were tried to a jury, Decker would have a strong argument. Before a jury, the limited probative value of the admissible features of the videotape would in all likelihood be outweighed by its prejudicial effect. *Even with limiting instructions, it would be difficult for an untrained jury to consider only the physical demeanor evidence and not consider the fact that the videotape showed Decker invoking his Miranda rights and not consider the communicative content of his statements. See Robinette v. State,* 741 N.E.2d 1162 (Ind. 2001) (holding that a trial court's limiting instruction could not cure the wrongful admission of *Miranda* invocations in a jury trial).

*Id.* at 355-56 (emphasis added).

We are not persuaded by the State's contention that the result here should be different because Colosimo "had no *Miranda* right to assert." Again, our supreme court has stated it is "impermissible to use an individual's exercise of his or her constitutional rights against them after the State implicitly assured the individual, through the *Miranda* warning, that his or her invocation of those rights would not be penalized." *Lyman*, 776 N.W.2d at 878. "Any breach of this implied assurance is a breach of fundamental fairness required by the due process clauses of the Federal and Iowa Constitutions." *Id.*

***E. Sufficiency of the evidence.*** On appeal, Colosimo argues the evidence was insufficient to support the conviction. Even assuming this challenge was adequately preserved,[8] viewing the evidence in the light most favorable to upholding the verdict, including all reasonable inferences that may

---

[8] The motion for new trial raised only a claim that the verdict was against the weight of the evidence.

arise therefrom, *see State v. Showens*, 845 nw2d 436, 439-40 (Iowa 2014), we conclude there was substantial evidence from which the jury could find the defendant guilty of OWI. The evidence showed Colosimo was stopped driving the wrong way down a one-way street and the officers smelled the odor of alcoholic beverage when they spoke with Colisomo. The officers observed Colosimo had watery, bloodshot eyes and had slurred speech. She admitted drinking. Colosimo's deemed refusal may be considered by the jury. We reject her insufficiency claim.

### IV. Conclusion.

Because Colosimo's due process rights were violated and that violation was not harmless, we reverse the conviction and remand for a new trial.[9]

**REVERSED AND REMANDED.**

---

[9] We need not address her remaining claim that she is entitled to a new trial because the verdict was contrary to the weight of the evidence.